**OLIVAREZ MADRUGA LAW ORGANIZATION, LLP**
Thomas M. Madruga – SBNY 160421
tmadruga@omlolaw.com
Lana Lukyanov – SBNY 328391
llukyanov@omlolaw.com
500 South Grand Avenue – 12th Floor
Los Angeles, CA 90071
Tel: (213) 744-0099
Fax: (213) 744-0093

Attorneys for Defendant,
SANTA ANA UNIFIED SCHOOL DISTRICT

Celia McGuinness (SBN 159420)
*cmcguinness@mcguinnesslawgrp.com*
Deborah Gettleman  (SBN 267309)
*dgettleman@mcguinnesslawgrp.com*
McGUINNESS LAW GROUP, PC
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 439-2950
Facsimile:  (510) 439-2951

Wendy Musell, (SBN 203507)
LAW OFFICES OF WENDY MUSELL PC
66 Franklin Street, Suite 300
Oakland, CA 94607
Telephone: (510) 270-2252
*wmusell@wendymuselllaw.com*

Attorneys for Plaintiff David Kim

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

DAVID KIM,

               Plaintiff,

    vs.

SANTA ANA UNIFIED SCHOOL DISTRICT,

            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 8:24-CV-00650 MEME-JDE
Hon. Mame Ewusi-Mensah Frimpong
Magistrate:     Hon. John D. Early
Courtroom 8B

**JOINT BRIEF-DEFENDANT MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

[Filed concurrently with Statement of Uncontroverted Facts and Conclusions of Law; Appendix of Declarations & Exhibits; and [Proposed] Order]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

)     Hearing Date:  November 6, 2025
)     Hearing Time:  10:00
)     Courtroom:     8B
)
)     Complaint:     March 26, 2024
)     Trial Date:    January 26, 2026
)
)
)
)
)
)
)
)

2     **JOINT BRIEF-DEFENDANT MOTION FOR**
**SUMMARY JUDGMENT/ADJUDICATION**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF UNDISPUTED FACTS ...................................................... 2

    a.    The District Installed a Marquees Notification System and Strobes to Accommodate DHH Employees and Students. ............................... 2

    b.    Plaintiff's Employment with the District. ............................................. 3

    c.    Plaintiff's Request for a Service Dog as a Reasonable Accommodation Was Granted. ................................................................. 4

    1.    Plaintiff Explored an Option to Have a Service Dog at Work ........................ 4

    2.    The District Conducted the Interactive Process in Good Faith ........................ 5

    3.    The District Granted Plaintiff's Request for the Service Dog. ........................ 8

III.  ARGUMENT ...................................................................................................... 17

    a.    Defendant's Legal Standard for Summary Judgment Which is Is Proper When Plaintiff Cannot Demonstrate Genuine Issue of Material Facts. 17

    b.    Plaintiff's Legal Standard - Plaintiff is Entitled to Summary Judgment. ........................ 18

    c.    Defendant's Legal Standards for Cross-Motion and Opposition to Motion for Summary Judgment ........................ 18

    a.    Defendant's Memorandum - The First Cause of Action for Violation of the Americans with Disabilities Act (42 U.S.C. §12111 et seq.) Fails as a Matter of Law ........................ 19

    1.    There Was No Change in Terms or Conditions of Plaintiff's Employment. ...... 20

    2.    Plaintiff Was Provided with Reasonable Accommodations. ........................ 20

    b.    Plaintiff's Opposition or/and Cross-Motion – First Cause of Action: Defendant Denial of an Available Reasonable Accommodation was a Violation of the ADA ........................ 22

    1    Plaintiff's Opposition or/ Cross-Motion - First Cause of Action: Defendant Denial of an Available Reasonable Accommodation was a Violation of the ADA. ........................ 222

    2.    Plaintiff's Reasonable Accommodation was available. ........................ 23

    3.    Defendant's 2-year delay in granting Plaintiff's reasonable accommodation request amounted to a denial ........................ 25

    4.    Defendant Applies an Incorrect Legal Standard. ........................ 25

5.    Defendant did not Provide Any Alternative Reasonable Accommodations.....26

6.    Defendant's allegation that Plaintiff caused the breakdown in the Interactive Process is not supported by any evidence. ................................................................27

c.    Defendant's Reply...........................................................................................27

1.    Plaintiff's First Cause of Action is for Discrimination in violation of the ADA but not for Failure to Accommodate. ..........................................................27

2.    Plaintiff not alleged in the Complaint claim for failure to accommodate in violation of the ADA fails as a matter of law, as well. ....................................28

i.    Defendant Provided Plaintiff with reasonable accommodations .....................28

ii.    Plaintiff's rebuttal of Defendant's allegations that Plaintiff caused the breakdown in the Interactive Process is not supported by any evidence. .........31

iii.    Plaintiff's arguments regarding Defendant's application of incorrect legal standard are not on point.................................................................................31

a.    Defendant's Moving Brief - The Second Cause of Action for Violation of Section 504 of the Rehabilitation Act (29 U.S.C. §794 et seq.) Fails as a matter of Law. ..............................................32

1.    Plaintiff did not suffer an injury in fact. .........................................................32

2.    Defendant Did not Discriminate Against Plaintiff Due to His Disability. .......34

3.    Dealy in Granting Plaintiff's request for the Service Dog Was not a Denial of Reasonable Accommodations.......................................................................34

b.    Plaintiff's Opposition or/and Cross-Motion to Second Cause of Action: Defendant Violated Section 504 On the Same Grounds As Its Violation of the ADA...........................................................................35

1.    Plaintiff has established all three elements of Article III standing, including that he suffered an injury in fact. ......................................................................36

2.    Defendant's Delay in Granting Plaintiff's Reasonable Accommodation amounted to a denial ......................................................................................36

c.    Defendant's Reply-Second Cause of Action: Defendant Violated Section 504 On the Same Grounds As Its Violation of the ADA.....................37

a.    Defendant Moving Brief – The Third Cause of Action for Violation of California Fair Employment and Housing Act [Cal. Gov't Code §12940(a)] Fails as a Matter of Law................................................38

b.    Plaintiff's Opposition or/and Cross-Motion to Third Cause of Action: Violation of California Fair Employment and Housing Act:

**JOINT BRIEF-DEFENDANT MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

Disability Discrimination .................................................................. 40

c.    Defendant's Reply- Third Cause of Action: Violation of California Fair Employment and Housing Act: Disability Discrimination ..................... 41

a.    Defendant Moving Brief–The Fourth Cause of Action for Violation of California Fair Employment and Housing Act [Cal. Gov't Code §12940(M)] Fails as a Matter of Law ............................................... 41

1.    Plaintiff was offered reasonable accommodations ........................... 42

2.    The requested accommodation was not available............................. 42

3.    To grant Plaintiff's request without knowing the dog's breed and size would impose an undue hardship on Defendant ........................................... 43

4.    Plaintiff failed to engage in the interactive process in good faith..................... 43

b.    Plaintiff's Opposition or/and Cross-Motion–Fourth Cause of Action: Violation of California Fair Employment and Housing Act-Unlawful Denial of a Reasonable Accommodation ................................................ 45

c.    Defendant's Reply-The Fourth Cause of Action for Violation of California Fair Employment and Housing Act [Cal. Gov't Code §12940(M)] Fails as a Matter of Law ....................................................... 46

a.    Defendant Moving Brief-The Fifth Cause of Action for Failure to Engage In The Interactive Process In Violation of California Fair Employment and Housing Act [ Cal. Gov't Code §12940(N; Cal. Code. Regs. § 11069(A))] Fails as a Matter of Law 11069(A)].................................................. 47

1.    Defendant Conducted the Interactive Process with Plaintiff in Good Faith.....47

2.    Plaintiff's Claim for Failure to Engage in the Interactive Process is Precluded Because the Requested Accommodation was Granted. ..................................47

b.    Plaintiff's Opposition or/and Cross-Motion - The Fifth Cause of Action for Failure to Engage In The Interactive Process In Violation of California Fair Employment and Housing Act [ Cal. Gov't Code §12940(N; Cal. Code. Regs. § 11069(A))] Fails as a Matter of Law 11069(A).................. 48

c.    Defendant's Reply-The Fifth Cause of Action for Failure to Engage In The Interactive Process In Violation of California Fair Employment and Housing Act [ Cal. Gov't Code §12940(N; Cal. Code. Regs. § 11069(A))] Fails as a Matter of Law 11069(A)............................................. 50

a.    Defendant Moving Brief-Sixth Cause of Action: Plaintiff is Entitled to Summary Judgment on His Claim for Failure to Prevent

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      Discrimination ................................................................... 51

b.    Plaintiff's Opposition or/and Cross-Motion-Sixth Cause of Action:
    Plaintiff is Entitled to Summary Judgment on His Claim for Failure
    to Prevent Discrimination ................................................ 52

c.    Defendants Reply- Sixth Cause of Action: Plaintiff is Entitled to
    Summary Judgment on His Claim for Failure to Prevent
    Discrimination52

a.    Defendant Moving Brief-The Seventh Cause of Action:
    Defendant's Violated Section 1135 In Denying Plaintiff's
    Reasonable Accommodation .......................................... 53

b.    Plaintiff's Opposition or/and Cross-Motion-The Seventh Cause of
    Action: Defendant's Violated Section 1135 In Denying Plaintiff's
    Reasonable Accommodation .......................................... 53

c.    Defendant Reply- The Seventh Cause of Action: Defendant's
    Violated Section 1135 In Denying Plaintiff's Reasonable
    Accommodation ............................................................. 53

a.    Defendant Moving Brief-Plaintiff is Entitled to Summary Judgment
    Regarding Certain of Defendant's Affirmative Defenses ................. 54

b.    Defendant Opposition-Defendant Moving Brief-Plaintiff is Entitled
    to Summary Judgment Regarding Certain of Defendant's
    Affirmative Defenses ..................................................... 55

IV.    PARTIES MEET AND CONFER EFFORTS ............................................. 57

V.    CONCLUSION ................................................................................. 57

a.    As Defendant's Conclusion ......................................... 57

b.    Plaintiff's Conclusion ................................................... 58

## TABLE OF AUTHORITIES

**Cases**

*.Abromson v. American Pacific Corp.*,
114 F.3d 898 (9th Cir.1997)..................................................................16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......................................................................16, 17

*Anderson v. Ross Stores, Inc.*,
2000 WL 1585269, at *8 (N.D. Cal. Oct. 10, 2000)................................23

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001).................................................................33

*Barton v. Unity Health System*,
758 Fed.Appx. 83 (2019) .....................................................................41

*Bassilios v. City of Torrance*,
166 F. Supp. 3d 1061 (C.D. Cal. 2015)..................................................48

*Bazile v. Fin.Sys. of Green Bay, Inc.*
983 F3d 274 (7th Cir. 2020.)................................................................30

*Beard v. Banks*
(2006) 548 U.S. 521 ...........................................................................17

*Brown v. Potter*,
457 F. App'x 668, 671 (9th Cir. 2011) ...................................................33

*Buckingham v. United States*,
998 F.2d 735, 740 (9th Cir.1993)..........................................................25

*Carolyn Humphrey v. Memorial Hospitals Association*,
239 F3d, 1135-36 (2001)......................................................................19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................................16, 17

*Cline v. Indus. Maint. Eng'g & Contracting Co.*,
200 F.3d 1223, 1229 (9th Cir. 2000)......................................................17

*Cripe v. City of San Jose*,
261 F.3d 877, 890 (9th Cir. 2001).........................................................20

*Cumming v, Premier Rehab Keller, PLLC*
596 U.S. 142 S.Ct. (2022) ...................................................................30

Dark v. Curry Cty.,
451 F.3d 1078, 1088 (9th Cir. 2006)......................................................21

*Davis v. Astrue*,
874 F.Supp. 2d 856 (2012).................................................................30

*Davis v. Fed. Election Comm'n*,
554 U.S. 724 (2008.) .........................................................................30

*E.E.O.C. v. Fred Meyer Stores, Inc.*,
954 F. Supp. 2d 1104, 1112 (D. Or. 2013), *on reconsideration in part* (Sept. 19, 2013)................49

*Elton v. McDonough,*
2021 WL 2322474, at *7 (E.D. Cal. June 7, 2021) ..................................................23

*Fiol v. Doellstedt,*
58 Cal. Rptr. 2d 308, 311 (Ct. App. 1996) ..............................................................47

*Garcia v. Walmart, Inc.,*
No. 23-35321, 2024 WL 2745789 ..............................................................................23

*Gelfo v, Lockheed Martin Corp.,*
 (2006) 140 Cal.App.4 p. 54 ......................................................................................43

*Gencarelli v. Twentieth Century Fox Film Corp.,*
2018 WL 376664, at *6 (C.D. Cal. Jan. 11, 2018) ..................................................49

*Gilmour v. Gates, McDonald & Co.*
(11th Cir. 2004) 382 F.3d 1312 ................................................................................17

*Green v. Hous. Auth. Of Clackamans Cnty*
994 F.Supp. 1253 ..............................................................................................24, 26

*Hanson v. Lucky Stores, Inc.,*
74 Cal.App4th 228, Cal.Rptr.2d 487 ........................................................................36

*Hermosillo v. County of Orange,*
562 F. Supp. 3d 802 (C.D. D.C. 2021) ....................................................................16

*Hernandez v. Rancho Santiago Cmty. College Dist.,*
(2018) 22Cal.App.5th 1187 ......................................................................................38

*Holmes v. Petrovich Development Com, LLC*
(2011) 191 Cal.App.4th 1047 ..................................................................................36

*Humphrey v. Mem'l Hosps. Ass'n,*
239 F.3d 1128, 1137 (9th Cir.2001) ..........................................................24, 44, 45

*Hutton V. Elf Atochem N. Am, Inc.,*
 F3d 884 (9TH Cir. 2001.) ........................................................................................18

*Hutton v. Elf Atochem N. Am, Inc.,*
 F 3d 884, 891 (9th Cir. 2001) ..................................................................................23

*Jensen v. Wells Fargo Bank,*
(2002) 85 Cal.App. 4th 345 Cal. Rptr. 2d 55 ....................................................36, 38

*Jensen v. Wells Fargo Bank,*
102 Cal. Rptr. 2d 55, 62 (Ct. App. 2000) ..........................................................24, 41

*Jones v. Department of Corrections and Rehabilitation,*
62 Cal. Rptr. 3d 200, 209 (2007). ............................................................................37

*Kohler v. Staples the Off. Superstore, LLC,*
291 F.R.D. 464, 470 (S.D. Cal. 2013) ......................................................................50

*Lies v. Farrell Lines, Inc.,*
641 F.2d 765 (9th Cir. 1981) ....................................................................................16

*Livingston v. Fred Meyer Stores, Inc.,*
388 F. App'x 738, 741, n 2 (9th Cir. 2010) ..............................................................32

*Los Angeles City. v. Davis,*
440 U.S. 625 (1979.) ................................................................................................30

*Lujan v. Defenders of Wildlife*
  (1992) 504 U.S. 555 ...................................................................................... 35

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 560–61 (1992). ....................................................................... 33

*Lyons v. Legal Aid Society*,
  68 F.3d 1512 (2d Cir. 1995.) ........................................................................ 31

*Marathon Mfg. Co. v. Enerlite Products Corp.*
  (5th Cir. 1985) 767 F.2d 214 ....................................................................... 17

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
  475 U.S. 574 (1986) ..................................................................................... 17

*McCray v. Wilkie*,
  966 F.3d 616 (7th Cir. 2020)......................................................................... 21

*Moore v. Regents of Univ. of California*,
  206 Cal. Rptr. 841 860 (Ct. App. 2016)........................................................ 37

Morin v. Moore
  (5th Cir. 2002) 309 F.3d 316......................................................................... 17

*Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*,
  166 Cal. App. 4th 952, 983, 83 Cal. Rptr.
  3d 190, 218 (2008) ........................................................................................ 42

*Parker v. Twentieth Century-Fox Film Corp.*,
  3 Cal. 3d 176, 178 (1970).............................................................................. 50

*Perez v. Proctor & Gamble Mfg. Co.*,
  161 F. Supp. 2d 1110, 1119 (E.D. Cal. 2001) .............................................. 42

*Porter v. Cal. Dep't of Corr.*,
  419 F.3d 885, 891 (9th Cir. 2005).................................................................. 17

*Prilliman v. United Air Lines, Inc.*,
  (1997) 53 Cal.App.4th 935 ...................................................................... 39, 45

Ramirez v. Ghilotti Bros. Inc.,
  941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) .............................................. 33

*Ravel v. Hewlett-Packard Enterprise, Inc*,
  228 F.Supp. 3d. (9 cr. 2017)......................................................................... 47

*Ravel v. Hewlett-Packard Enterprise, Inc.*,
  228 F.Supp. 3d 109 ................................................................................. 18, 24

*Rope v. Auto-Chlor System of Washington, Inc.*,
  163 Cal. Rptr. 3d 392, 410 (2013) ................................................................ 37

Saks v. Franklin Covey Co.
  (2nd Cir. 2003) 316 F3d 337......................................................................... 51

*Schilling v. La. Dep't of Transp. & Dev.*,
  662 F. App'x 243, 246–47 (5th Cir. 2016) .................................................... 28

*Scotch v. Art Institute of California*,
  93 Cal. Rptr. 3d 338, 367 (Ct. App. 2009)................................................... 48

*Selenke v. Med. Imaging of Colorado*,
   248 F.3d 1249, 1262 (10th Cir. 2001) ..........................................................23

*Snapp v. United Transp. Union*,
   889 F.3d 1088, 1095 (9th Cir. 2018)............................................................20

*Strife v. Aldine Independent School District*,
   138 F.4th 237 (5th Cir. 2025)........................................................................23

*Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist.*,
   731 F. Supp. 947, 961 (E.D. Cal. 1990)........................................................45

*Swanson v. Morongo Unified School Dist.*,
   (2014) 232 Cal.App.4th 954...........................................................................40

*Taylor v. Principal Fin. Grp., Inc.*,
   93 F.3d 155, 165 (5th Cir. 1996)....................................................................28

*Towne Mgmt. Corp. v. Hartford Accident & Indemnity Co.*
   627 F. Supp. 170 .....................................................................................17, 50

*Trafficante v. Metro. Life Ins. Co.*,
   409 U.S. 205 (1972) .......................................................................................33

*Trujillo v. N. Cty. Transit Dist.*,
   (1998) 63 Cal.App.4th 280.............................................................................47

*Trujillo v. North County Transit Dist.*
   73 Cal. Rptr. 2d 596, 602 (Ct. App. 1998).....................................................48

*U.S. Airways v. Barnett*,
   535 U.S. 391, 400 (2002) ...............................................................................24

*U.S. E.E.O.C. v. UPS Supply Chain Sols.*,
   620 F.3d 1103, 1110 (9th Cir. 2010)..............................................................24

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*
   (1977) 429 U.S. 252, 267 ...............................................................................37

*Wallace v. City of Stanislaus*,
   (2016) 245 CaL.App.4TH 109 Cal Rptr.3D 462 ...........................................36

*Wallance v. Cnty of Stanislaus*,
   (2016) 245 Cal.App. 4th 134, Cal.Rptr.3d 462 .............................................36

*Walton v. U.S. Marshals Serv.*,
    492 F.3d 998, 1005 (9th Cir. 2007)...............................................................32

*Wasco Products, Inc. v. Southwall Techs., Inc.*
   (9th Cir. 2006) 435 F.3d 989 .........................................................................17

*Watson v. Fort Worth Bank & Tr.*,
   487 U.S. 977, 979 (1988) ...............................................................................50

*Wilson v. County of Orange*,
   (2009) 169 Cal.App.4th 1185.........................................................................43

*Wong v. Regents of the Univ. of Cal.*,
   410 F.3d 1052, 1058 (9th Cir.2005)...............................................................32

*Yanowitz v. L'Oreal USA, Inc.*
   (2005) 36 Cal.4th 1028, 1054-1055)..............................................................37

**JOINT BRIEF-DEFENDANT MOTION FOR
SUMMARY JUDGMENT/ADJUDICATION**

*Yarn v. Wilkie*,
   2021 WL 5494319, at *6 (S.D. Cal. Nov. 23, 2021)................................................21
*Yochim v. Carson,*
   935 F3d 586 2019) ...............................................................................................41
*Zivkovic v. S. California Edison Co*.,
   302 F3d 1080  (9th Cir. 2002)...............................................................19, 24, 49

**Statutes**

42 U.S.C. § 2000e-2(k)(2) ........................................................................................50
Cal. Gov't Code § 12940(n)......................................................................................44
California Civil Code § 1431.2 ..................................................................................50

**Other Authorities**

EEOC, Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA,
   No. 915.002 ..........................................................................................................20

**Rules**

Cal. Gov't Code § 11135...........................................................................................48
Fed. R. Civ. P. 56 (c) ...............................................................................................16
Fed. R. Civ. P. 56(a) ...........................................................................................16, 17
Fed. R. Civ. P. 56€..................................................................................................16

**Regulations**

28 C.F.R. § 35.136....................................................................................................45
Cal. Code Regs., tit. 2 §11069 ............................................................................40, 41

**JOINT BRIEF-DEFENDANT MOTION FOR
SUMMARY JUDGMENT/ADJUDICATION**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

#### A.    DEFENDANT'S INTRODUCTION

Plaintiff, David Kim ("Kim" or "Plaintiff"), a hard-of-hearing employee of Defendant, Santa Ana Unified School District ("Defendant" of "District") obtained permission to bring a service dog to work about six months later than he expected. The delay was caused by Plaintiff's own actions in bad faith and unavailability of the service dog. Further, Plaintiff was able and excelled in performing the essential functions of his position with another accommodation that the District provided Plaintiff and other deaf and hard-of- hearing ("DHH") employees at Taft Elementary with for years before Kim filed this meritless lawsuit. Lastly, Plaintiff has not suffered an adverse employment action since he made his request for the service dog.

Despite all stated above, on March 26, 2024, Kim filed a federal disability discrimination complaint alleging seven causes of action for 1) Violation of the Americans with Disabilities Act [42 U.S.C. §12111 et seq.]; 2) Violation of Section 504 of the Rehabilitation Act [29 U.S.C. §794 et seq.]; 3) Violation of California Fair Employment and Housing Act [Cal. Gov't Code §12940(a)]; 4) Violation of California Fair Employment and Housing Act [Cal. Gov't Code §12940(m)]; 5) Failure to Engage in the Interactive Process in Violation of California Fair Employment and Housing Act; 6) Failure to Prevent Discrimination, Harassment and Retaliation; and 7) Violation of California Government Code §11135 (Exhibit 1.) After the parties conducted extensive discovery and took numerous depositions, this motion follows because the evidence does not support any and all of the alleged causes of actions.

#### B.    PLAINTIFF'S INTRODUCTION

Summary judgment in favor of Plaintiff David Kim is warranted. Defendant admitted (1) Plaintiff is disabled, (2) Plaintiff is qualified for his position, (3) requested a reasonable accommodation of being allowed to bring a service dog to work, (4) Plaintiff provided all of the information requested by Defendant and engaged in good faith in the interactive process, (5) Defendant failed to engage in the interactive process for a year for no reason, (6) Defendant then denied Plaintiff's request for accommodation for another year until it received notice that it was being sued. Defendant further admits

1  (7) there was no undue hardship to grant the requested accommodation; (8) there was no safety concern;

2  (9) no alternative accommodations were offered to Plaintiff from Defendant; and (10) Defendant admits

3  that alternative accommodations that it discussed amongst itself but were not offered to Plaintiff was

4  ineffective. On this record, Plaintiff is entitled to summary judgment of his claims.

5      **C.    DEFENDANT'S INTRODUCTION TO REPLY**

6          Plaintiff prepared a response to Defendant's motions for summary judgment from which it is

7  unclear whether it is an opposition, and cross-motion, or both. For all causes of action Plaintiff failed

8  to prove all essential elements and to address most of the issues raised in Defendant's motion Therefore,

9  the facts identified in the original motion not addressed shall be deemed admitted. Furthermore, most

10  of the arguments in Plaintiff's cross-motion are supported only by his dispute of Defendant's

11  undisputed facts which cannot establish undisputed material facts for a motion for summary judgment.

12  Therefore, Plaintiff's cross-motion failed as a matter of law. Lastly, Plaintiff added a separate motion

13  for summary judgment on Defendant's defenses addressing different issues, such a motion cannot be a

14  part of Plaintiff's cross-motion and shall be disregarded as improper. Thus, Plaintiff's motion/cross-

15  motion shall be denied in its entirety and Defendant's motion for summary judgment or alternatively

16  summary adjudication of specific issues shall be granted.

17  **II.    STATEMENT OF UNDISPUTED FACTS**

18      **A.  DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

19          **a.    The District Installed a Marquees Notification System and Strobes to**

20              **Accommodate DHH Employees and Students.**

21          Since 2015, Taft Elementary School in the District has had a Deaf and Hard of Hearing

22  education program serving DHH students. (UMF1.) The school provides small, specialized classes

23  exclusively for DHH students as well as numerous other services, for example, on-site audiological

24  testing, access to audiologists, language interpreters, and sign language classes. (UMF2.)

25  Each school year, there are between 10 and 13 specialized classes for DHH students at Taft Elementary,

26  with a teacher and at least two instructional assistants in each class. Several teachers and instructional

27  assistants working with DHH students have a certain level of hearing impairment. Overall, there are

28

1   between 10 and 11 DHH employees each school year at Taft Elementary. (UMF 2-4.) None of the DHH

2   employees at Taft Elementary has ever brought a service dog to work. (UMF5.)

3            To provide a safe environment and accommodate DHH students and employees, an advanced

4   marquees-notification system, strobes, and other equipment (collectively, the jointly "Equipment") had

5   been installed to alert DHH staff and students of emergencies and/or fires before Plaintiff requested a

6   service dog. (UMF11.) The Equipment was installed outside the building and inside the school in all

7   the communal space, hallways, libraries, playrooms, and classrooms. The District invested hundreds of

8   thousands of dollars in the installation, maintenance and upgrade of the Equipment, which was installed

9   after the program was implemented. (UMF6,8,9.)

10           In the event of a notification, strobes start flashing in short, bright lights to capture attention of

11  persons in the room. A deaf or a person who has severe hearing loss should look at the marquees

12  mounted on the wall to see the alert. The notification is displayed in different colors depending on the

13  message: white for announcements, blue for lockdown, red for fire or earthquake emergencies. There

14  are other means of notification at Taft Elementary School, but the District's primary focus is on strobes

15  and marquees to accommodate DHH employees and students. The Equipment functions when triggered

16  and properly utilized. The District performs regular testing, fire drills, and training to ensure the

17  Equipment is used properly. (UMF7.)

18           The Equipment was installed to accommodate DHH students and staff at Taft Elementary

19  School to ensure their safety. (UMF9,10.) The District has never received requests for additional

20  accommodations due to being deaf or hard of hearing from employees at Taft Elementary, except from

21  Plaintiff. (UMF12.) Defendant has received a few requests from DHH employees outside Taft

22  Elementary and in at least in one case, the District is implementing something similar to the Equipment

23  used at Taft Elementary but tailored for that employee individually. (UMF13.) Defendant is not aware

24  of any other means by which it can accommodate this disability. (UMF15.)

25           **b.  Plaintiff's Employment with the District.**

26  Plaintiff is bilaterally deaf but has a cochlear implant which partially restores his hearing. With the

27  cochlear implant he can understand half of what he hears. With his family members he talks verbally

28  but at work, he uses the American Sign Language. (UMF22.)

On or about March 19, 2015, Plaintiff was hired as a Substitute Instructional Assistant Deaf and Hard of Hearing at Taft Elementary School to work specifically with DHH students. His job responsibilities were the following: communicate by voice or signing with or for students who were deaf and hard of hearing; maintain classroom or learning facility in a clean and organized manner, supervise and support students during special activities during lunchtime or on school grounds; assist with onboarding and or exiting students from the District transportation, supervise student activities during lunch time or on the school grounds. (UMF16.)

On or about December 20, 2019, Kim was offered a permanent position as an Instructional Assistant DHH at Taft Elementary, with a monthly salary of $2.470.50. (UMF17,19.) Currently he holds the same position at the same school and his monthly salary has increased to $3,791.25. (UMF18, 20.) Since joining the District Plaintiff has always been able to perform the essential functions of his position and even excelled in his work. (UMF21,28.) He had not made any requests to accommodate his hearing disability until he decided to obtain a service dog primarily for personal and unrelated to work reasons approximately in 2020 or 2021. (UMF27.) Apparently, the Equipment which he used on a regular basis was a reasonable accommodation for Plaintiff. (UMF27.)

c. **Plaintiff's Request for a Service Dog as a Reasonable Accommodation Was Granted.**

1. **Plaintiff Explored an Option to Have a Service Dog at Work**

Plaintiff learned about a possibility of having a service dog for deaf individuals at Boy Scout Wood Badge event, approximately in 2009. (UMF29.). He brought this issue to his wife, but they made a decision not to have a service dog at that time because they had a son who was very young; "so it's a lot of commitment if we do bring a dog into our family." (UMF30.) Plaintiff decided to obtain a service dog in 2020 or 2021. (UMF31.)

On or about March 13, 2021, Kim wrote an email to Scott Barlow, Principal of Taft Elementary at that time, whereby he inquired about the District's policy regarding the school's dogs in the workplace. (UMF35.) He did not make a request for accommodations at that time. (UMF36.) Camile Boden, the Executive Director Risk Management at that time, was notified about Plaintiff inquiry and

advised the staff that Plaintiff had to go through the formal interactive process. In her email dated March 15, 2021, she called the formal interactive process just the "process." (UMF37.)

On May 5, 2021, Julie Reynoso, an employee of the District, wrote an email to Plaintiff in which she advised him to begin the process of applying for a service dog and provide updates. (UMF38.) Due to the vague language of this email, Plaintiff mistakenly thought that he had obtained an approval to bring the dog to work, when in reality, he was advised to start the formal interactive process. Plaintiff did not initiate the interactive process himself. (UMF46.)

Plaintiff decided to obtain a service dog from Canine Companions for Independence ("CCI"). In June 2021, Plaintiff informed the District that there was a long waiting list, up to two years, to get the service dog due to COVID, but did not make a formal request for accommodations. (UMF39, 41.) Plaintiff was willing to wait for such a long time and did not consider alternative accommodations. (UMF43, 44.) Only on September 30, 2021, he submitted his application for a service dog to CCI but did not initiate the interactive process himself. (UMF 45, 46.)

### 2. The District Conducted the Interactive Process in Good Faith.

Plaintiff was providing regular updates concerning the status of his application, however he failed to initiate the interactive process himself, even though it was his responsibility. (UMF 46, 47.) After receiving information that he had been scheduled to have the second interview with CCI, the District scheduled itself the first interactive process meeting for March 21, 2022. At that time, neither Plaintiff nor the District had information about the size or bread of Plaintiff's future companion or when he might obtain a service dog.

On March 21, 2022, Plaintiff had the first interactive meeting. He was asked why he needed a service dog at work. (UMF49.) He explained that he needed the dog because he could perceive only about half of the sounds and not always recognize where the sound is coming from. (UMF52.) When Plaintiff was asked about the reasons why he needed the service dog specifically at work he gave almost the same answer: to be notified about alarms, emergencies, or hear someone calling his name, but was not able to explain how the dog would help him to perform the essential functions of his work. (UMF53.)

Sara Nazir, the new Executive Direct Risk Management also asked Kim about liability and who was responsible if anything happened to the dog, as well as about the expected dog's breed and size. Plaintiff did not have this information. (UMF48.) Ms. Nazir requested Plaintiff to provide medical documentation describing his work restriction and explaining why he needed a service dog to perform the essential functions of his position. She wanted to know how the dog was going to help him with the job duties. (UMF50.)

In April 2022, Plaintiff provided the District with two doctor's notes, one of which stated that he needed a service dog for personal safety and the other that Kim had a disability. None of them described his work restriction. (UMF54.) Plaintiff was reminded several times to provide medical documentation describing his work restrictions and why the service is necessary to perform the essential functions of his position, but he failed to do so. (UMF55.) In August 2022, Kim informed the District that he had about 6 to 9 months to wait for the service dog. (UMF57.)

On November 14, 2022, Debra Acosta sent an email to Plaintiff and others to schedule another interactive process meeting. (UMF58.) Plaintiff responded to this email only two weeks later, on November 29, 2022. (UMF60.) However, on November 22, 2022, he notified the District that his two-week service dog training would start place on December 5, 2022, and that after the training, Plaintiff would bring the dog to work. Plaintiff did not bother to fill out a leave request. (UMF61.)

On December 2, 2022, the second interactive process meeting was held. (UMF62.)  Plaintiff failed to provide the requested medical documentation and/or additional information about the dog by that time despite numerous requests. (UMF51, 63.) Therefore, Sara Nazir could not approve Plaintiff's request at that time but obviously, did not deny his request for the service dog. (UMF66.) Plaintiff was informed that he would not be able to bring the service dog on campus until completion of the interactive process.

After the December 2, 2022 meeting, David Kim canceled the training at CCI.  (UMF67.) However, the lack of the District's approval had nothing to do with Plaintiff's decision to cancel the training. Per Katie at CCI, it was recommended that Plaintiff was keeping the dog 24/7, but it was not a prerequisite for placement. (UMF68.) Plaintiff could take a few weeks off to bond with the animal

and then leave the dog at home while at work until his request was approved. (UMF69.)  Kim was spending only six hours a day at work, therefore he had 18 hours to bond with the dog further. Furthermore, knowing the dog's size and breed would have facilitated and expedited the District's decision on whether to approve or deny Plaintiff's request. (UMF70.)

Meanwhile, the District was working with CCI to assess its potential liability and gather information about service dogs for DHH persons. (UMF40.)

The third interactive process meeting took place on February 10, 2023. James Ebiner, Executive Director Employee Relations was involved.  An option was discussed for Plaintiff to obtain the dog and keep it off campus until the interactive process was completed. Plaintiff was offered two weeks of paid leave to receive, train and bond with the service dog, as an interim accommodation. (UMF72.) At the meeting, Plaintiff was informed that a discussion of how his restrictions impacted his ability to perform the essential functions of his position should take place, and that his restriction and needs for the dog should be substantiated by medical documentation. However, Plaintiff insisted that his restrictions were obvious, he could not hear and was reluctant to discuss the essential functions of his position and his restrictions. (UMF73, 75.) Further, Plaintiff insisted on having the service dog at work as a matter of rights and refused to consider any other accommodations. (UMF76.)

Plaintiff failed to provide the requested medical documentation by that time despite numerous requests but insisted that having the service dog on campus was his right. (UMF93.) Further, placement of additional strobes and marquees was considered and offered to Plaintiff as an alternative accommodation. (UMF78.)  However, Plaintiff insisted on one specific accommodation, having the service dog at work.  (UMF76, 80.)

The District could not complete the interactive process at that time because of missing medical documentation. In addition, Plaintiff did not have an actual dog physically in his possession, thus the District did not know what kind of dog Plaintiff would bring to school and could not give Plaintiff an open-ended "yes" for approval but did not deny his request. (UMF77.)

In February 2023, James Ebiner sent Plaintiff two emails reminding him that to determine reasonable accommodations, the District needed to have a discussion of the following: the essential

1    functions of his position; how Plaintiff's ability to perform those functions was impacted by his

2    restrictions, and reasonable accommodation that could be made. (UMF81, 84.)

3        On or about April 14, 2023, the fourth interactive process meeting was held. (UMF85.) By that

4    time, Plaintiff hired an attorney, Wendy Musell who attended the meeting. Mr. Ebiner explained that

5    the District had no chance to discuss Plaintiff's work restrictions and how his disability affected his

6    ability to perform his job. However, Counsel Musell did not allow her client to discuss his work

7    restrictions, insisted on the instant approval for Plaintiff to bring the service dog to work at least on a

8    trial basis, and when Mr. Ebiner did not grant her request, she suspended the meeting claiming that

9    there was no meaningful engagement in the interactive process. (UMF87.) Therefore, the District did

10   not have an opportunity to discuss Plaintiff's restrictions and his needs for the service dog at work

11   again. (UMF87.)  Lastly, Plaintiff did not provide the requested medical documentation and had no

12   information about his future service dog at that time. (UMF89.)

13       After the fourth interactive process meeting, the District hired a law firm Atkinson, Andelson,

14   Loya, Ruud, and Romo, to assist with this matter. On or about June 2, 2023, counsel for the District

15   sent Ms. Musell a letter explaining that Defendant had not made a determination regarding whether it

16   would approve Plaintiff's request to have the service dog at work as a reasonable accommodation. The

17   letter also explained that the District had not been aware of any issues Mr. Kim had with his ability to

18   perform all essential functions of his job. (UMF92, Exhibit 12.)  Furthermore, the letter explained that

19   David Kim had not provided medical documentation describing his work restrictions or why a service

20   dog was necessary to perform the essential functions of his position, and also pointed out that Plaintiff

21   had broken down the interactive process by insisting on only one accommodation and refusing to

22   consider alternatives. (Exhibit 12.) After receipt of the letter, Plaintiff provided the District with an

23   unsigned letter from his audiologist, Ginger Stickney, PHD, dated June 13, 2023, whereby she

24   recommended Plaintiff to use a hearing dog at work. (UMF93.)

25       **3.  The District Granted Plaintiff's Request for the Service Dog.**

26   On or about June 20, 2023, the fifth interactive process meeting took place. At the meeting, Plaintiff

27   finally agreed to discuss his job restrictions and his request for this special accommodation was

28   approved. (UMF94.)

**JOINT BRIEF-DEFENDANT MOTION FOR
SUMMARY JUDGMENT/ADJUDICATION**

Plaintiff took time off for the service dog training in August 2023 but on August 30, 2023, the District received a letter from CCI that David Kim had to cancel the training for personal reasons and will not take the dog assigned to him. (UMF95, 96.) At his deposition, Plaintiff explained that he had cancelled the training because his wife could not agree on having a dog without knowing its size and "what kind of the dog it was." (UMF97.)  Apparently, Plaintiff was able to resolve the issue and obtained the dog on September 21, 2023. (UMF99.)  He started bringing the dog to work in a week thereafter without issues. (UMF101,102.)

### B.    PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

Mr. David Kim ("Kim" or "Plaintiff") is an Instructional Aide for Defendant (also referred to as "District"). He was born Deaf. He has "a profound sensorineural hearing loss bilaterally."  UMF-Opp 22 (UMF-Opp refers to Opposition to Defendant's Statement of Material Facts).  Kim uses a cochlear implant in his right ear to understand speech. *Id.* "With the implant he is able to understand about half of the words if he is in a quiet room and cannot use cues from lipreading. Without the cochlear implant he is deaf." *Id.* His primary language is ASL. PAMF 107 (PAMF refers to Plaintiffs Additional Material Facts). Kim is unable to hear sounds like knocks on the door, alarms, people calling his name, or verbal announcements. *Id.* Defendant admitted Kim is a qualified person with a disability and Defendant was aware of his deafness, which limits the major life activity of hearing. PAMF 111.[1] Kim's doctors supported his request for a hearing service dog. UMF-Opp 15. PAMF-112.

Kim first requested reasonable accommodation for a hearing service dog on March 13, 2021, in an email to his Principal, Scott Barlow. UMF-Opp 15, 35, 36, 53. Kim explained that he wanted to acquire a service dog from Canine Companions for Independence ("Canine Companions" or "CCI"), and wanted to know the accommodation process before he actually started his CCI application. *Id.* Kim explained that the purpose of the service dog would be to alert him to sounds, such as people calling his name and the classroom phone ringing. *Id.*

Risk Management Director Sarah Nazir admits the emails of March 15, 2021 demonstrate HR, risk management and Barlow understood Kim was requesting reasonable accommodation of service

---

[1] The District also admitted it is the recipient of state and federal funding. PAMF 108.

**JOINT BRIEF-DEFENDANT MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

1  dog in the workplace and Defendant should have provided Kim with the reasonable accommodation

2  process and policies. Defendant had no policies related to service animals. UMF-Opp 15, 35, 36, 53.

3      Two months later on May 5, 2021, Julie Reynoso, a Risk Management administrator,

4  responded, "…I wanted to reach out to you and advise you to start the process to apply for a hearing

5  dog." UMF-Opp 13, 36, 53. Nazir admitted the email confirmed that Kim had asked for a reasonable

6  accommodation for the use of a hearing dog.  UMF-Opp 15, 36, 53. Kim began the application process

7  for a service animal, updating Defendant on his progress more than five separate times between May

8  2021 and March 7, 2022. *Id.* Each time Defendant thanked him for the update. *Id.*

9      Executive Director of Employee Relations James Ebiner, testified as the Fed. R. Civ. Pro.

10  30(b)(6) person most knowledgeable regarding Defendant's service animal policies, reasonable

11  accommodation procedures, decisions regarding Kim's accommodation request, and emergency

12  notification policies. UMF-Opp 106. Ebiner admitted he had not taken any ADA training while at the

13  District and there is no training on reasonable accommodations for employees.[2] UMF-Opp 106 Ebiner

14  acknowledged that Kim's regular updates and willingness to provide information showed he was

15  "engaging in good faith in the interactive process according to district policy." UMF-Opp 15. Defendant

16  did not seek further information from Kim regarding his request for a reasonable accommodation.

17  UMF-Opp 53.

18      A year after his first request and ten months after the reasonable accommodation appeared to

19  be granted, Defendant stated they wished to "discuss the interactive process with you." Ebiner admitted

20  that the District could have started the interactive process a full year prior. When asked if anything

21  precluded the district from starting interactive process meetings in March 2021, he stated, "I don't think

22  anything precluded the district from that" and "nothing is precluding us from having those meetings

23  earlier." UMF-Opp 15, 53. Ebiner confirmed, "[t]he district could have started the interactive process

24  meetings a year prior." *Id.* Ebiner admitted Kim, on the other hand, was "engaging in good faith in the

25  interactive process according to district policy."  UMF-Opp 15. Ebiner also admitted that there is no

26  _____

27  [2] Ebiner admitted that while he is responsible for addressing reasonable accommodations for
    Defendant, he had not taken the time to read Kim's federal court complaint as he had "other
28  priorities." UMF-Opp 106.

1   evidence that Kim ever refused to provide any information requested by Defendant related to his request

2   for reasonable accommodation. *Id.* Nazir testified as follows: Q: Has there ever been an instance where

3   Mr. Kim had not provided information that the District requested regarding his request for a reasonable

4   accommodation of a service animal? A: I don't believe so. Not that I know of. I am only speaking for

5   myself." *Id.*

6        By February 2022, Principal Barlow was communicating with district administrators about

7   Kim's request, noting Kim "expressed that he has been in communication with one of your employees

8   in risk management" and had "the impression there are no issues...to bring the service dog to Taft." *Id.*

9   However, Nazir responded: "Scott, who has he talked to in risk, because this is the first time I'm hearing

10  about this?" *Id.*

11       The first interactive process meeting was finally held on March 21, 2022. UMF-Opp 15, 28, 53.

12  Following the meeting with Scott Barlow and Nazir, Kim sent a comprehensive email on April 4, 2022,

13  explaining his need for a service dog, "I explained there are situations and sounds that I can't fully

14  recognize even though I have a cochlear implant...There are times I can't recognize my name when

15  being called at whatever distance, depending on the surrounding background noise." *Id*. Kim provided

16  work-related examples, "There are moments when the fire drill alarm went on. I had no idea what the

17  sound was until I asked what was happening" and explained how background noise affected his ability

18  to respond to emergencies. *Id*. Nazir admitted that safe evacuation of school is for every employee an

19  essential job function – "yes, I would say so." UMF-Opp 15, 53. Kim provided audiologist and doctor

20  letters, with both offering to answer any questions the District had. Kim provided his medical

21  information at the District's request, even though the fact that he is Deaf is well-known by Defendant.

22       Nazir attended the March 21, 2022, interactive process meeting, but could not recall anything

23  about the meeting: did not know the length of the meeting, did not take notes, did not observe others

24  taking notes, and does not recall what anyone said at the meeting. UMF-Opp 15, 34, 53. Nazir did not

25  direct Ebiner to take any particular action or ask that he collect any particular information. "I didn't

26  direct him to ask anything, no." *Id.*  Nazir testified that there was no particular document that sets forth

27  the factors the District is to consider before bringing a service animal onto an elementary school

28  campus. *Id.*  Students who wish to use a service dog do not require the permission of the principal or

**JOINT BRIEF-DEFENDANT MOTION FOR
SUMMARY JUDGMENT/ADJUDICATION**

1  District designee. *Id.* Nazir also testified that she did not tell Kim that approval of his accommodation

2  was contingent on CCI covering liability insurance. *Id.* Nonetheless, Kim provided information that

3  CCI had insurance coverage for its service animals. *Id.* Nazir testified that she did not seek, nor did she

4  direct Ebiner to gather more information. *Id.*

5        Principal Barlow testified he never asked Kim for additional information or documentation

6  beyond what was provided by his audiologist and doctor. UMF-Opp 15, 53. In turn, Kim testified that

7  Defendant did not ask him to provide additional documentation. *Id.* Between April and May 6, 2022,

8  there was no evidence that Defendant communicated to Kim that it needed any additional information

9  that he had not provided. UMF-Opp 15, 34, 53, 106.

10        On May 6, 2022, Kim stated he had an upcoming two-week training session to receive his

11  service dog. UMF-Opp 15, 53. Nazir admitted that as of May 30, 2022, Kim had provided Defendant

12  with all the information that it had requested. *Id.*

13        On May 23, 2022, a terrifying event happened on campus, highlighting Defendant's unequal

14  treatment of deaf and hard of hearing students and staff, and demonstrating the real-life benefits a

15  hearing service dog would have for Kim. An intruder walked onto the part of the school campus housing

16  the Deaf and Hard of Hearing ("DHH") Program, wearing a backpack. PAMF 113. He was stopped by

17  a campus supervisor as he was trying to walk into a bathroom. PAMF 114. The man left, but less than

18  two blocks away he drove onto a sidewalk, deliberately hitting and injuring three young children. *Id.*

19  There was a concern by Barlow that the intruder had incendiary devices, and bomb sniffing dogs were

20  dispatched to the school. PAMF 115.

21        After calling the police, Defendant evacuated the campus except the deaf and hard of hearing

22  classes, leaving Kim and deaf and hard of hearing kindergarten and pre-kindergarten students stuck

23  inside the school where the intruder was present. Ebiner testified that this was not how it was "supposed

24  to go," explaining, "[w]hen there's an evacuation site-wide, if it is a site-wide evacuation then that

25  means site-wide." PAMF 116. The DHH program has marquees that can relay written messages and

26  warning lights to alert of potential danger, but neither were used. UMF-Opp 6.

27        Long after the rest of the school had evacuated, a custodian came to the DHH preschool and

28  kindergarten classrooms to notify the staff and tell them to leave immediately. PAMF 117. The DHH

staff members, including Kim, had almost no time to make sense of what was happening and guide their young students to safety. The DHH teachers and students went to the front of the school, having no way to know the entire school had congregated in the back. PAMF 118. One of the tasks Kim's service dog would have provided was to alert him to the audible alarm that the rest of the school heard, allowing him, his students and the other teachers to get to safety at the same time as the hearing students and teachers. PAMF 119. Defendant's actions placed Kim and the students at great risk of harm.

Kim regularly communicated his status in obtaining a service dog, offering to provide any information required. Ebiner admitted that Kim was keeping Defendant updated and was engaging in good faith in the interactive process. UMF-Opp 15, 40, 53, 59. Nazir testified that as of November 8, 2022, she had no information as to whether Kim had refused to provide any information that was requested of him by the District. UMF-Opp 40, 53, 59.

By November 2022, Kim included union representatives and Deaf advocacy groups in his communications to Defendant, given Defendant's failure to approve his request for accommodation and failure to communicate with him, writing, "Since I've heard nothing from you since June, I'm including everyone else in this e-mail to ensure accountability, communication, and awareness." UMF-Opp 59.

On December 2, 2022, Kim met with Principal of Taft Elementary, Julie Choi, and described his need for accommodation of a service animal. Kim told Choi he had Shelly Dickinson, Canine Companion Program Director, on his cellphone, and that she was available for Defendant to ask whatever questions the District had about the service dog. UMF 40, 59. Neither Ms. Choi nor any other District employee made inquiries of Ms. Dickinson. *Id.* Choi in turn emailed Ebiner and Nazir about Kim's request. *Id.* Canine Companions also confirmed in writing that Kim's training and thus his ability to obtain a service dog, would be postponed until Defendant came to a decision regarding whether he can have a service dog at work. *Id.* In response, Nazir responded that there would be follow up; however, Choi testified that she did not recall further follow-up to Nazir's December 2, 2022 email. *Id.*

Ebiner admitted Kim provided detailed information regarding his disability, how his hearing loss impacted the essential functions of his job, and how a hearing dog would assist him in performing his job duties. Ebiner further admitted that Kim "had provided that information well before [the] second

meeting with him, where he had described his disability, he described limits with his hearing, he described how it impacts his work and provided specific examples." UMF 28, 32, 40, 53. Ebiner and Nazir both admitted that one of the functions of Kim's job was to timely respond to alarms and evacuations. UMF-Opp 28, 32, 40. Ebiner confirmed that there was nothing that precluded Defendant from asking for any required information from Kim and Canine Companions back in 2021 when Kim had initiated his request for reasonable accommodation, but it did not do so. UMF-Opp 34, 40. Nazir testified that she did not contact Canine Companions, nor did she ask Ebiner to secure any additional information about service animals, including her purported concerns about liability. *Id.*

During the second interactive process meeting on December 2, 2022, Mr. Kim notified Defendant that Canine Companions had approved him for a service dog and his training was scheduled for December 5, 2022, when he would receive his service dog. Defendant stated in response that Kim could not bring the service dog to campus. UMF-Opp 59. This resulted in Kim having to cancel the training. He lost the opportunity to have a service dog at that time from Canine Companions. *Id.*

In January 2023, nearly two years after Kim first provided Canine Companions' contact information, Ebiner finally reached out to Canine Companions with a single question of whether Kim could leave his service dog at home during work hours or it must be with him 24/7. UMF Opp 40, 68. Canine Companions confirmed having the "dog attending work and doing their regularly assigned work is usually the best thing for the placement.  We have found that separating ta service dog from the handler for a large chunk of the day is often counterintuitive to the purpose of the dog being placed with the individual and interferes with the bond that is developed between the team." CCI also provided information about their program, information regarding the dogs, insurance coverage, and offered to participate in discussions, but the district never took them up on their offer for additional consultation. *Id.*

Kim attended a fourth interactive process meeting on February 10, 2023.  Ebiner stated in writing, "as Dr. Nazir shared, at this time you are not permitted to bring a service animal into the workplace." UMF-Opp 71, 86. Ebiner also stated that Kim had failed to provide information regarding his restrictions and how the restrictions impacted his work. However, at deposition, Ebiner admitted this was untrue; Kim had provided information regarding his disability, his limits with hearing and how

1    his disability impacted his work, as well as how a service dog would assist him. *Id.* After that meeting,

2    Kim notified the District he had retained legal counsel, noting his request for accommodation had been

3    pending for two years. *Id.*

4         Kim attended a fifth interactive process meeting on April 14, 2023. UMF-Opp 71. The meeting

5    summary states that when asked if Defendant was rejecting a service dog, "Mr. Ebiner advised 'yes.'"

6    When asked why it was denying the service dog, "Mr. Ebiner advised Dr. Nazir would need to explain."

7    *Id.* No other accommodation was offered to Kim, although he had confirmed he was willing to discuss

8    all potential accommodations. *Id.* Ebiner admitted that Nazir and Ebiner had denied Kim's request for

9    accommodation, verbally and in writing. *Id.*

10         Even though Defendant did not request it, Kim provided a further audiology report on June 13,

11    2023, again describing his disability, the substantial limits of his major life activity of hearing, and how

12    a service animal could assist him.  UMF-Opp 87, 94. Ebiner confirmed this was the same information

13    that Kim had already been provided. *Id.*

14         Ebiner admitted that granting Mr. Kim's request for accommodation to have his service animal

15    at work (1) would not have posed a safety risk, (2) was not a direct threat to Kim or others, (3) there

16    was no undue hardship for Defendant that would allow Defendant to refuse Kim's accommodation

17    request and (4) there was no business necessity that would have allowed Defendant to deny Kim's

18    accommodation request. UMF-Opp 34, 71. Ebiner admitted that Kim had provided all requested

19    information to Defendant and that "nothing is insufficient" regarding the documentation Kim

20    submitted. UMF 71. Ebiner also admitted Defendant had no evidence that Kim had not fully complied

21    with all requested information. *Id.* Nazir testified similarly. UMF 34, 71, 106.

22         Defendant admitted it failed to investigate Kim's complaints of disability discrimination and

23    failure to accommodate, even though the Defendant's own policies require complaints to be

24    immediately investigated. UMF-Opp 106. Nazir testified she, Ebiner and Reynoso "were the only three

25    people that were involved from the District end that were really documenting and reviewing the request

26    Mr. Kim had." *Id.* Nazir testified that she did not know the scope of the investigation, she was not

27    interviewed, was not asked for documents, does not know if anyone else was interviewed, nor if a

28    verbal or written report was made. *Id.* She also did not know if Kim was ever told that there was an

investigation. *Id.* Ebiner admitted that there was no evidence that Kim was ever provided with Defendant's reasonable accommodation policies, despite Kim having requested them. *Id.* Nazir testified similarly. Nazir testified she did not provide Kim any policies or procedures; nor was she aware of any other person in the District having provided Kim with any policies or procedures regarding reasonable accommodations, complaint procedures, nor service animals at the workplace UMF-Opp 34, 106.

On June 1, 2023, given the persistent denials of his request for reasonable accommodation for the past two years, Kim, through his legal counsel, served a government claim notice on Defendant, advising that he was proceeding with legal claims against Defendant for failure to accommodate and disability discrimination. UMF-Opp 88. On June 20, 2023, after receiving notice that it would be sued, Defendant finally relented and informed Kim he could bring a service animal to work. *Id.* Subsequently, Kim was able to get off the wait list at Canine Companions. On September 5, 2023, he was matched with his service dog, Syrah. Defendant stated it wanted to engage in a further interactive process meeting but would not indicate what topics would be discussed and then never followed up.

Defendant admitted it never offered Kim any alternative accommodation in lieu of a service dog, even though Kim indicated he would be willing to explore other alternative accommodations. UMF-Opp 43, 48. Defendant also admitted that any alternative it discussed internally but had not been offered to Kim were "not effective."[3], [4] *Id.* Choi admitted the marquees and strobes that were located on campus have significant limitations. The marquees are affixed to walls and don't follow Kim, and

---

[3]  Nazir initially testified in deposition that alternative accommodations like "additional strobes and marquees" were offered to Kim and rejected by him. UMF-Opp 43, 48. When questioned, Nazir could not identify anything in writing that reflected such offers, nor could she recall when or how such alleged offers were communicated. *Id.* Throughout her deposition, Nazir testified that she did not know, or could not recall specifics from meetings or conversations; she did not take notes during meetings; and did not observe if others took notes. *Id.* Nazir testified inconsistently about her level of involvement, describing herself as being actively involved in meetings and decision making, and later stating that she "stepped away," and "removed myself so I can't tell you all the communications and everything that was not done." *Id.*

[4] Statements made in Nazir's declaration that contradict her deposition testimony should be disregarded. Where the district court makes a factual determination that an affidavit is a "sham" and the inconsistency between the deposition testimony and affidavit is clear and unambiguous, the court may strike the affidavit and order sanctions against the party that submitted the affidavit. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012); *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99 (9th Cir. 2009); Fed. R. Civ. P. 56 (h); see also *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). A district court may also "find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember" or did not know. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). The sham affidavit rule preserves "the utility of summary judgment as a procedure [by] screening out sham issues of fact." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

**JOINT BRIEF-DEFENDANT MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

1  there are locations in the school where Kim wouldn't be in sight of a marquee. *Id*. Choi admitted "there

2  have been drills where the lights have not been flashed" or are not working. UMF-Opp 48. Kim testified

3  that while the school has visual notification devices, they are not always visible when he is moving

4  around the campus working with students. UMF-Opp 6, 15, 48. Defendant has not offered nor provided

5  emergency notifications to his cell phone or other personal notification devices.  UMF-Opp 6, 48.  Ms.

6  Choi testified that the District "cannot guarantee" that Kim will always have access to these systems

7  when escorting students around campus. *Id.*

8       In a moment of understated candor, Ebiner admitted that if he had to do the whole thing over

9  again, he "probably would have treated it a little bit differently." UMF-Opp 106.

10  **III.   ARGUMENT**

11

12       **A.  DEFENDANT'S LEGAL STANDARD - DEFENDANT'S LEGAL STANDARD
          FOR SUMMARY JUDGMENT WHICH IS IS PROPER WHEN PLAINTIFF
13        CANNOT DEMONSTRATE GENUINE ISSUE OF MATERIAL FACTS.**
             **a.   Defendant's Legal Standard for Summary Judgment Which is Is Proper
14              When Plaintiff Cannot Demonstrate Genuine Issue of Material Facts.**

15

16

17       `Summary judgment is appropriate where the record, read in the light most favorable to the

18  nonmovant, indicates, "that there is no genuine dispute as to any material fact and the movant is entitled

19  to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also *Celotex v. Corp. v. Catrett*, 477 U.S.

20  317, 322-23 (1986).  Summary adjudication or partial summary judgment "upon all or any part of [a]

21  claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion

22  of the claim. Fed. R. Civ. P. 56(a); see also *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir.

23  1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination,

24  even of a single claim ….")

25       Material facts are those necessary to the proof or defense of a claim and are determined by

26  referring to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving

27  party has the initial burden of establishing the absence of a material fact for trial.  *Id*. at 256. "Rule

28  56(a) mandates the entry of judgment … against a party who fails to make a showing sufficient to

1    establish the existence of an element essential to that party's case, and on which that party will bear the

2    burden of proof at trial." *Celotex v. Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

3    The standard set forth in Rule 56(c) is met and the Court must grant the motion, when the nonmoving

4    party "fails to make a showing sufficient to establish the existence of an element essential to that party's

5    case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett* (1986)

6    477 U.S. 317, 322 (1986); see also *Abromson v. American Pacific Corp*., 114 F.3d 898, 902 (9th

7    Cir.1997); *Hermosillo v. County of Orange,* 562 F. Supp. 3d 802, 809-810 (C.D. D.C. 2021).

8    ### b.   Plaintiff's Legal Standard - Plaintiff is Entitled to Summary Judgment.

9    Summary judgment disposes of factually unsupported claims and defenses. *Celotex Corp. v.*

10   *Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted when "the pleadings, the

11   discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

12   any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a),

13   *see also Porter v. Cal. Dep't of Corr*., 419 F.3d 885, 891 (9th Cir. 2005). Fed. R. Civ. P. 56(a); *Anderson*

14   *v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Material facts are those which may affect the outcome

15   of the case. *Id.* The moving party bears the burden of establishing the absence of a genuine issue of

16   material fact. *Celotex*, 477 U.S. at 323-25. "Once the moving party meets its burden . . . the nonmoving

17   party must . . . identify facts which show a genuine issue for trial." *Cline v. Indus. Maint. Eng'g &*

18   *Contracting Co*., 200 F.3d 1223, 1229 (9th Cir. 2000).  Where a rational trier of fact could not find for

19   the non-moving party based on the record as a whole, there is no "genuine issue for trial." *Matsushita*

20   *Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Kim's evidence establishes that there is no

21   genuine issue for trial in this case and Defendants cannot establish certain  affirmative defenses.

22   ### c.   Defendant's Legal Standards for Cross-Motion and Opposition to Motion

23   ### for Summary Judgment

24   A party opposing a motion for summary judgment must set forth specific material facts showing

25   a "genuine dispute" as to a "material fact."  FRCP 56(a), (c)(1). Opposition limited to grounds raised

26   in pleadings: A party cannot oppose summary judgment by raising grounds not in issue under the

27   pleadings. *Wasco Products, Inc. v. Southwall Techs., Inc.* (9th Cir. 2006) 435 F.3d 989, 991.  An

28   opposing party may not argue claims not raised by the pleadings: "A plaintiff may not amend her

1    complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald &*

2    *Co.* (11th Cir. 2004) 382 F.3d 1312, 1315; Morin v. Moore (5th Cir. 2002) 309 F.3d 316, 323.

3    In addition to filing an opposition, the opposing party may respond to a motion for summary judgment

4    by filing a cross-motion for summary judgment in its favor. *Towne Mgmt. Corp. v. Hartford Accident*

5    *& Indemnity Co.* (D MD 1985) 627 F. Supp. 170, 171-172. Cross-motions for summary judgment often

6    occur when the parties generally agree as to the facts but disagree as to the conclusions to be drawn or

7    their legal significance. *Marathon Mfg. Co. v. Enerlite Products Corp.* (5th Cir. 1985) 767 F.2d 214,

8    217.

9        **Cross-motion is not a substitute for opposition**: Filing a cross-motion for summary judgment

10   is not an opposition to the original motion. Thus, unless the party filing the cross-motion also files an

11   opposition, the facts identified in the original motion may be deemed admitted. *Beard v. Banks* (2006)

12   548 U.S. 521, 527, 126 S. Ct. 2572, 2577.

13       **B.     THE FIRST CAUSE OF ACTION FOR VIOLATION OF THE AMERICANS**

14       **WITH DISABILITIES ACT (42 U.S.C. §12111 ET SEQ.)**

15           **a.   Defendant's Memorandum - The First Cause of Action for Violation of**
             **the Americans with Disabilities Act (42 U.S.C. §12111 et seq.) Fails as a**

16           **Matter of Law**

17       In the Complaint, Plaintiff alleges that the District discriminated against Plaintiff and violated

18   because it had "refused to engage in a good faith interactive process, denying him this reasonable

19   accommodation for two years with no articulated reasons in violation of the ADA". (Exhibit1, ¶46.)

20   These allegations are false.

21       The ADA prohibits an employer from discriminating against a qualified individual with

22   disability because of the disability. To state a prima facie claim of disability discrimination under the

23   ADA, Plaintiff must allege facts plausibly show: (1) [she] is a disabled person within the meaning of

24   the [ADA]; [2[ [she] is qualified individual with a disability; and (3) [she[ suffered an adverse

25   employment action because of [her] disability. *Hutton V. Elf Atochem N. Am*, Inc., F3d 884, 891 (9TH

26   Cir. 2001.)

27

28

### 1. There Was No Change in Terms or Conditions of Plaintiff's Employment.

It is undisputed that Plaintiff, who is a hard of hearing person, is a disabled person in the meaning of the ADA. (UMF2.)  There is also undisputed that he is a qualified person with a disability. However, as it is discussed below, Plaintiff did not suffer an adverse employment action, and this action fails as a matter of law.

Under the Americans with Disabilities Act (ADA), an adverse employment action is a significant negative change in the terms, conditions, or privileges of employment. This includes actions like termination, demotion, or significant changes to job duties or responsibilities. The action must be more than a minor inconvenience; it must be materially adverse, meaning it would materially affect the terms and condition of Plaintiff's employment.

Since joining the District, Plaintiff has been holding the same position, working the same hours, receiving positive performance reviews, and his salary was progressively increasing. (UMF18-21.) There was no change in the terms, conditions or privileges of Plaintiff's employment before and after he made his request for the service dog. Therefore, Plaintiff did not suffer an adverse employment action, and this claim fails as a matter of law.

### 2. Plaintiff Was Provided with Reasonable Accommodations.

Denial of Plaintiff's requested accommodation is not an adverse employment action in the meaning of the ADA if either of the alternatives it offered her as a reasonable accommodation. However, denial of reasonable accommodations might constitute an adverse employment action under the ADA.  *Ravel v. Hewlett-Packard Enterprise, Inc.*, 228 F.Supp. 3d 109 (2017).) An employer is not obligated to provide an employee the accommodation [she] requests or prefers, the employer needs only provide some reasonable accommodation. *Zivkovic v. S. California Edison Co.*, 302 F3d 1080, 1089. (9th Cir. 2002).  A reasonable accommodation is the one which would permit an employee to perform the essential functions of [her] job. *Carolyn Humphrey v. Memorial Hospitals Association*, 239 F3d, 1135-36 (2001).

Here, while Kim was waiting for the service dog and went through the interactive process, another reasonable accommodation, the Equipment, was offered to Plaintiff and other DHH employees at Taft Elementary. (UMF9-10, 26.) The Equipment had been installed years before Plaintiff made his request for the service dog. (UMF11.) It is located outside the building and inside the school in all communal spaces, hallways, libraries, playrooms, and classes. (UMF8.)

The District has never received complaints or requests for additional accommodations from DHH employees at Taft, except from Plaintiff who never made any requests for accommodation before asking permission to bring the service dog to work. (UMF27.) Further, Kim asked permission to bring the service dog to work only after over 6 years of working for the District. (UMF12.) There is evidence that Plaintiff wanted to have a service dog mostly for personal reasons. Even without the dog Plaintiff was able to perform successfully all essential functions of his job with help of the Equipment. (UMF28.)

Therefore, the Equipment was a reasonable alternative accommodation for Plaintiff before and after his request for the service dog. Thus, Plaintiff was offered an alternative accommodation and as a result, he did not suffer an adverse employment action, and this cause of action fails as a matter of law. Kim's request for the service dog was substantiated by the same reasons the Equipment was installed, to be notified about alarms, emergencies and be more aware of the surroundings at work. (UMF24.) As discussed above, this accommodation was reasonable for Plaintiff because he was able to perform the essential functions of his position with the help of the Equipment. Furthermore, Defendant was not obligated to provide Plaintiff with an accommodation of his choice. Therefore, the District was not obligated to grant Plaintiff's request for the service dog at all. Lastly, as discussed below, Plaintiff's request for the service dog was granted immediately after completion of the interactive process. Thus, the alleged delay in granting Plaintiff permission to bring the service dog to work is not a denial of reasonable accommodations to Plaintiff.

Based on all stated above, Plaintiff did not suffer an adverse employment action and his cause of action for discrimination in violation of the ADA fails as a matter of law.

**JOINT BRIEF-DEFENDANT MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

b.  **Plaintiff's Opposition or/and Cross-Motion – First Cause of Action:**
**Defendant Denial of an Available Reasonable Accommodation was a**
**Violation of the ADA.**

1.  **Plaintiff's Opposition or/ Cross-Motion - First Cause of Action:**
**Defendant Denial of an Available Reasonable Accommodation was a**
**Violation of the ADA.**

Under Title I of the ADA for failure to accommodate, Plaintiff must show: 1) He is a qualified employee with a disability. A "qualified" individual includes "an individual with a disability who, *with* or without *reasonable accommodation,* can perform the essential functions of" the job. 42 USC§ 12111(8), 2) defendant received adequate notice of plaintiff's disability and desire for reasonable accommodation and 3) a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business. *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). These elements are all admitted or undisputed. It is undisputed that Plaintiff is a qualified individual with a disability. Kim has been deaf since he was a small child. Kim 20:16-19.  He has "a profound sensorineural hearing loss bilaterally."  UMF-Opp 22. Nor is it in dispute that Kim requested reasonable accommodation to bring a hearing service dog to work. UMF-Opp 15, 35, 36, 53. Nazir admits that emails of March 15, 2021 indicate that HR and risk management and Barlow understood Kim requested accommodation of a service dog in the workplace. *Id.*

There is no evidence that Kim's request for a service dog would have caused undue hardship for the District. Undue hardship "means significant difficulty or expense and focuses on the resources and circumstances of the particular employer in relationship to the cost or difficulty of providing a specific accommodation. Undue hardship refers not only to financial difficulty, but to reasonable accommodations that are unduly extensive, substantial, or disruptive, or those that would fundamentally alter the nature or operation of the business." *EEOC, Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA*, No. 915.002[5]; *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001) (The undue hardship standard is used to determine whether it

---

[5] https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada (last visited August 17, 2025) (herein after "EEOC Guidance on Reasonable Accommodation and Undue Hardship under the ADA)."

is too onerous for a particular employer to make a specific accommodation sought by a specific employee, given the employer's size, economic circumstances, and other relevant conditions.) Defendant admits that Kim's request did not pose any undue hardship. Ebiner admitted that granting Mr. Kim's request for accommodation to have his service animal at work (1) would not have posed a safety risk, (2) was not a direct threat to Mr. Kim or others, (3) there was no undue hardship for the District that would allow the District to refuse Mr. Kim's accommodation request and (4) there was no business necessity that would have allowed the District to deny Mr. Kim's accommodation request.[6] UMF-Opp 34, 71. Courts have held that granting the request is evidence that it does not pose an undue burden. *See e.g. Yarn v. Wilkie*, No. 3:19-CV-0893 W (KSC), 2021 WL 5494319, at *6 (S.D. Cal. Nov. 23, 2021) (citing *McCray v. Wilkie*, 966 F.3d 616 (7th Cir. 2020)) (a reasonable accommodation request for a new van was "not an especially complex or burdensome accommodation" since the VA ultimately provided new vans to all counselors after one complained). After it was notified that Kim planned to sue and a delay of two years, Defendant did grant the accommodation. UMF-Opp 88.

### 2. Plaintiff's Reasonable Accommodation was available.

Once Defendant was made aware of Plaintiff's desire for a reasonable accommodation, it had a mandatory obligation "to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations," Dark v. Curry Cty., 451 F.3d 1078, 1088 (9th Cir. 2006); Humphrey v. Memorial Hospitals Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001). At the summary judgment phase, once plaintiff has shown that an employer failed to engage in the interactive process in good faith, "the burden shifts to the employer to prove the unavailability of a reasonable accommodation." Snapp, 899 F.3d at 1095. Under the ADA, "there exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." Id. Here, there was an available and reasonable accommodation: a service dog. Kim first requested a reasonable accommodation for a hearing service dog on March 13,

---

[6] Defendant designated Ebiner as its Rule 30(b)(6) corporate representative. A 30(b)(6) witness testifies on behalf of the entity, and thus "his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity." Fed. R. Civ. P. 30; *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012).

2021, in an email to Barlow. UMF-Opp 15, 35, 36, 53. Kim explained that the purpose of the service dog would be to alert him to sounds, such as people calling his name and the sound of the classroom phone ringing. Id. Nazir admits that emails dated March 15, 2021, indicate that HR, risk management, and Barlow all understood that Kim was requesting reasonable accommodation of service dog in the workplace. Id. Nazir also testified that she viewed Reynoso's May 5, 2021, email as confirming with Kim that he had asked for a reasonable accommodation of the use of a hearing dog. Id.  At that point, Defendant was obligated to begin the interactive process. Defendant admits that they should have responded to Kim's March 13, 2021 email with a description of the reasonable accommodation process and policies that would apply. UMF-Opp 35, 36, 53. Ebiner acknowledged that Kim's regular updates and willingness to provide information showed he was "engaging in good faith in the interactive process according to district policy." UMF-Opp 15. Ebiner admitted that Defendant could have started the interactive process a full year prior. UMF-Opp 15, 53. Despite having the information that it needed to grant Kim's reasonable accommodation request, Defendant required Kim to attend four additional interactive process meetings over the following year. During these meetings Defendant continued to ask for information related to Kim's need for a service dog --- information that was already in their possession. Ebiner admitted that Kim had provided all requested information to Defendant and that "nothing is insufficient" regarding the documentation Kim submitted. UMF 71. Ebiner admitted Defendant had no evidence of any manner Kim had not fully complied with all requested information to Defendant. Id. Nazir testified similarly. UMF 34, 71, 106.

Defendant admitted it never offered Kim any alternative accommodation in lieu of a service dog. UMF-Opp 43, 48. Defendant also admitted that any alternative it discussed internally but had not been offered to Kim were "not effective." UMF-Opp 43, 48. It is Defendant's burden to "prove the unavailability of a reasonable accommodation." *Snapp*, 899 F.3d at 1095. Defendant cannot do so. The accommodation requested was for permission to bring a service dog to work, which was available to Defendant since Kim made his initial request in March of 2021. Defendant unlawfully denied Kim's request for a service animal in violation of the ADA.

### 3. Defendant's 2-year delay in granting Plaintiff's reasonable accommodation request amounted to a denial.

The fact that two years after Plaintiff's first request for a service animal, Defendants granted accommodation does not obviate Defendant's liability. An unwarranted delay in the reasonable accommodation process amounts to denial. *Elton v. McDonough*, No. 119CV01723NONEHBKPS, 2021 WL 2322474, at *7 (E.D. Cal. June 7, 2021); *Anderson v. Ross Stores, Inc.,* No. C 99-4056 CRB, 2000 WL 1585269, at *8 (N.D. Cal. Oct. 10, 2000); *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1262 (10th Cir. 2001) (collecting cases); *EEOC Guidance on Reasonable Accommodation and Undue Hardship under the ADA* ("[u]nnecessary delays can result in a violation of the ADA.").

The Fifth Circuit Court of Appeals recently analyzed this issue in a case with facts similar to this case. *Strife v. Aldine Independent School District* involved a disabled public school employee who brought a lawsuit against the school district for failure to accommodate, based on an unjustified delay in granting her request to bring a service dog to work. *Strife v. Aldine Independent School District,* 138 F.4th 237 (5th Cir. 2025). The court found that the six months it took the school district to respond could amount to an unreasonable delay, given that they repeatedly asked for information that she had already provided them, they failed to offer any alternative accommodations in the interim and the district granted her request only after she initiated litigation. *Id*. at 247. The same result applies here.

### 4. Defendant Applies an Incorrect Legal Standard.

Defendant relies on an incorrect legal standard to establish a *prima facie* violation of failure to accommodate under the ADA.[7] Erroneously, Defendant adds an additional element of "adverse impact." "Adverse impact" is only relevant to analyzing disparate impact claims. *See Garcia v. Walmart, Inc.*, No. 23-35321, 2024 WL 2745789, articulating the elements for both disparate impact (at *1) and failure to accommodate (at *3) (9th Cir. May 29, 2024). The cases Defendant cites are inapposite to this claim. Defendant cites *Hutton v. Elf Atochem N. Am*, Inc., F 3d 884, 891 (9th Cir.

---

[7] As previously described, the elements of this cause of action are: 1) He is a qualified employee with a disability. A "qualified" individual includes "an individual with a disability who, *with* or without *reasonable accommodation,* can perform the essential functions of" the job. 42 USC§ 12111(8); 2) defendant received adequate notice of plaintiff's disability and desire for a reasonable accommodation and 3) a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business. *Snapp,* 889 F.3d at 1095.

**JOINT BRIEF-DEFENDANT MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

2001), which in required the element of "adverse impact." But *Hutton* was a lawsuit involving a wrongful discharge claim. *Id.* at 891. There, the Court held that his diabetic episodes created a direct threat to the employer and therefore he was not covered as a "qualified person with a disability under the ADA." *Id.* Defendant also relies on *Ravel v. Hewlett-Packard Enterprise, Inc.*, 228 F.Supp.3d 109 (2017) to support its position that an "adverse impact" is required for a reasonable accommodation claim. But *Ravel* is an outlier and cites to *Hutton* and *Jensen v. Wells Fargo Bank,* 102 Cal. Rptr. 2d 55, 62 (Ct. App. 2000), both wrongful termination cases. The Ninth circuit laid out the elements for a denial of a reasonable accommodation claim under the ADA Title I in *Snapp* and "adverse impact" is not one of them.

### 5. Defendant did not Provide Any Alternative Reasonable Accommodations.

Defendant admitted that no alternative reasonable accommodations were offered to Kim. UMF-Opp 43, 48. The interactive process requires "direct communication between employer and employee to explore in good faith the possible accommodations." *Zivkovic v. S. California Edison Co.,* 302 F.3d 1080, 1089 (9th Cir. 2002). Plaintiff was never given an opportunity to weigh in on it. Nazir 296:13-20, 297:1-6. Further, at least one court in this District has held that alternative accommodation of a marquee and strobe lights for deaf people are not as effective when compared with hearing service dogs. *See Green v. Hous. Auth. of Clackamas Cnty.,* 994 F. Supp. 1253, 1256-7 (D. Or. 1998) (landlord installing a strobe fire alarm is not an equal alternative accommodation to his hearing service dog because it does not alert him to all sounds and requires that plaintiff to be standing in the same room as the alarm to know it was going off).[8] Defendant admits that it is also true here: the marquees and alarms are not effective. UMF-Opp 6, 15, 48. "An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations." *U.S. E.E.O.C. v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1110 (9th Cir. 2010) (citing *U.S. Airways v. Barnett,* 535 U.S. 391, 400 (2002); *see also Humphrey v. Mem'l Hosps. Ass'n,* 239 F.3d 1128, 1137 (9th Cir.2001) ("An appropriate reasonable

---

[8] Additionally, Defendant concedes strobes and marquees was installed years before Kim's accommodation request. [Defendant's UMF 11]. Because reasonable accommodations are always prospective, this fact is irrelevant. EEOC *Guidance on Reasonable Accommodation and Undue Hardship under the ADA* at n 36.

accommodation must be effective"). Principal Choi admits that "there have been drills where the lights have not flashed [because] the lights aren't working" and that Mr. Kim is not always going to be in a place where he can see the marquees. *Id.*

Defendant also suggests that the marquees were a reasonable alternative because, Plaintiff was able to perform the essential functions of the job even without a service dog. This argument fails. "Employers are not relieved of their duty to accommodate when employees are already able to perform the essential functions of the job." *Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir.1993). It is undisputed that Kim does not hear certain sounds like alarms and people calling his name. UMF-Opp 15, 35, 36, 53. Additionally, Nazir admitted that emergency evacuation of students is an essential function of Kim's position.  UMF-Opp 15.

### 6.    Defendant's allegation that Plaintiff caused the breakdown in the Interactive Process is not supported by any evidence.

Defendant's argument that Kim is responsible for the breakdown in the interactive process because of his failure to provide medical documentation is fiction. Defendant admitted that Kim engaged in good faith in the interactive process and kept Defendant up to date. UMF-Opp 15. Defendant admitted that Plaintiff provided all the information it requested of him. It admits Kim never refused to provide information requested by Defendant and never refused to attend any interactive process meeting. UMF-Opp 15. On the other hand, Defendant admitted it could have started the interactive process a full year earlier than it did and had no explanation for not doing so. UMF-Opp 34. No rational trier of fact could find for Defendant based on the record. *See Matsushita*, 475 U.S. at 587.

### c.    Defendant's Reply

### 1.    Plaintiff's First Cause of Action is for Discrimination in violation of the ADA but not for Failure to Accommodate.

Violation of the ADA is a form of discrimination because the ADA is a federal law that prohibits discrimination against individuals with disabilities in various areas of public life. Plaintiff's first cause of action is for Violation of 42 U.S.C. §1211(a) [Discrimination], but not for failure to accommodate in violation of the ADA [42 U.S.C. §1211(8)]. Exhibit 1 ¶43. Furthermore, specifically for this cause

of action, Plaintiff alleges discrimination, *see supra*, and that as a direct result of Plaintiff's **discriminatory conduct [but not its failure to accommodate Plaintiff's disabilities]** Plaintiff suffered damages. Exhibit 1-¶¶47-49. Therefore, this cause of action is for discrimination but not for failure to accommodate which has different elements Plaintiff needs to prove.

As discussed in Defendant's opening brief, Plaintiff did not suffer an adverse employment action and for that reason this cause of action fails as a matter of law. Furthermore, in a case with a similar fact pattern but where the facts are less favorable to the employer [A disabled Plaintiff whose physical conditions have been progressively deteriorating and who had already had a service dog, requested to bring dog to work as an accommodation, but approval of that reasonable accommodation was delayed for six months and was approved only when Plaintiff presented a doctor's note describing her restriction and confirming that alternative accommodations did not exist. The employee maintained the same role and compensation, received high performance evaluations, and was never reprimanded, and did not suffer a physical injury] the Court granted Defendant's motion for summary judgment on discrimination in violation of the ADA claim because this cause of action requires more than a de minimis injury and there was no evidence that Defendant's actions had affected the terms, conditions, or privileges of Plaintiff's employment. *Strife v. Aldine Independent School District* (5th Cir. 2025) 138 F.4th 237.

### 2. Plaintiff not alleged in the Complaint claim for failure to accommodate in violation of the ADA fails as a matter of law, as well.

#### i. *Defendant Provided Plaintiff with reasonable accommodations*

Without presenting a single undisputed fact instead of his mostly meritless disputes of Defendant's UMFs, Plaintiff argues that Defendant did not provide Plaintiff with any alternative reasonable accommodations. For that reason, the failure to present any evidence to support his cross-motion, Plaintiff's response can be considered only as an opposition to Defendant's motion.

At least one court held that marquees and strobe lights for deaf people could be reasonable accommodation for deaf people. *Green v. Hous. Auth. Of Clackamans Cnty (D. Or. 1998) 994 F.Supp. 1253, 1256-7.* The fact that the Equipment might not be as effective as a hearing service dog is irrelevant because employer is not obligated to provide a disabled employee with an accommodation of his choice

or the most effective accommodation, employee is obligated to provide the employee only with a reasonable accommodation which is not necessarily the most effective one. *Zivkovic supra*. Furthermore, Plaintiff failed to present single evidence that the Equipment was an ineffective accommodation. Plaintiff's assertion that Defendant admits that the Equipment was not effective [accommodation] is a sanctionable lie. (UMF 6, 15, 48.)

To the contrary, it is undisputed that Plaintiff worked for a special program dedicated to DHH elementary school children. Many teachers and assistants working for that program also had a certain level of hearing impairment. The school was designed specifically for this purpose. The Equipment was installed to accommodate DHH students and employees. Effectiveness of the Equipment as a reasonable accommodation is evidenced by the fact that none of DHH employees working for the program, except Plaintiff, ever asked for additional accommodations. (UMF1-6). There is no doubt that occasionally the Equipment could malfunction or not be utilized due to human error. However, a hearing dog as an accommodation is also not perfect. However, occasional malfunctions of the Equipment or human error would not make the equipment ineffective. Furthermore, there is no evidence that a hearing dog would never fail to notify his handler of an emergency or if someone is calling his name, even if the dog is sick, stressed, anxious or distracted. It is unlikely that such evidence exists. Thus, Plaintiff's argument that Defendant did not provide Plaintiff with alternative accommodation fails.

It is undisputed that Plaintiff did not have a service dog when he requested this accommodation and the service dog was not available to him until at least December 2022. (UMF 39, 61.) [CCI clients are matched with service dogs during a training session.] For Plaintiff, the first opportunity to attend the training was December 2022. (UMF 61.) Plaintiff's argument that Kim requested a reasonable accommodation on March 13, 2021 or that Ebiner acknowledged that Kim was engaged in good faith interactive process claims are not supported by evidence or even contradict the existing ones. (UMF 34, 25, 91) As discussed in the opening brief above, Plaintiff was uncooperative. He was reluctant to discuss how the service dog would help him perform essential functions of his position, insisted on only one accommodation, refused to provide the requested medical documentation, and refused to obtain the service dog and keep it at home until the completion of the interactive process. (UMF 46,

47, 50-91) In *Strife, supra*, Plaintiff had a service dog before applying for permission to bring the service dog to work. Therefore, it was feasible for Plaintiff to do the same. However, without a legitimate reason, Kim refused to obtain the dog and keep it at home until completion of the interactive process. Therefore, Plaintiff's allegations are meritless and are not supported by evidence and law.

This case is distinct from *Strife* whereby the Court ruled that a six-month delay in granting Plaintiff's request for a service dog as an accommodation in combination with a hostile work environment constitutes denial of reasonable accommodations. The Court concluded that requesting Strife to undergo an IME after she had provided doctors notes describing how the dog would help her at work constitutes harassment/hostile work environment. To the contrary, in this instant matter among other differences, Defendant did not ask Kim for the same information or did not request unnecessary examinations after obtaining it from Plaintiff or acted in bad faith otherwise.

The submission of a request for accommodation "triggers the employer's obligation to participate in [an] interactive process" to identify an appropriate accommodation. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). There is no evidence that Kim has ever submitted a formal request or initiated the interactive process himself but attempted to circumvent the process by bringing the service dog to work without approval. (UMF 47-48).

Delay in the interactive process alone does not necessarily constitute a violation of law. Disability laws and applicable case law do not require "that an employer must move with maximum speed to complete this process and preempt any possible concerns." *Schilling v. La. Dep't of Transp. & Dev.*, 662 F. App'x 243, 246–47 (5th Cir. 2016), as revised (Oct. 5, 2016). In *Strife* the allegations do not merely concern delay but also a lack of good faith from Defendant in meaningfully evaluating the request in an appropriately timely manner. In this instant matter, the District did not have the requested information until June 2023. Therefore, it is not responsible for the delay. Furthermore, Kim was provided with reasonable alternative accommodations and unlike Strife, Kim did not ensure physical pain while working without the requested accommodation. Furthermore, risk factors involved in Kim's case were not present in *Strife*, such as interaction with small children on a regular basis, lack of opportunity for the District to evaluate the dog for fitness into the elementary school environment. Note while ADA prohibits taking the service dog size and breed into consideration, it allows for the

evaluation specific dog for fitness into the work environment [that was the reason the District did not contact CCI and did not inquire about Kim's future companion's breed and size].

Based on all stated above, Plaintiff's reliance on *Strife* for this non-existent cause in the Complaint cause of action does not have merit, Plaintiff's arguments failed, and Defendant is entitled to judgment in its failure as a matter of law.

> ## ii. *Plaintiff's rebuttal of Defendant's allegations that Plaintiff caused the breakdown in the Interactive Process is not supported by any evidence.*

For this cause of action, Defendant did not discuss Plaintiff's failure to engage in a meaningful interactive process. However, Plaintiff's failure to engage in the interactive process in good faith was discussed in detail in the moving papers for summary adjudication of the fourth cause of action, failure to accommodate in violation of the FEHA. Each argument was supported by multiple material facts. (*see supra*).

Plaintiff's arguments concerning the interactive process are not supported by a single undisputed fact, *see supra*. Furthermore, the arguments are based on misinterpretations and non-existent admissions. (see supra, as well as Defendant's response to objections to evidence, reply in support of UMF, objections to Plaintiff's evidence, opposition to PUMF.) As discussed above, it is undisputed that in March 2022, Defendant initiated the interactive process itself even though the requested accommodation was not available and would not be available for a very long time and Plaintiff failed to make a formal request for the service dog. (UMF 46, 49-52, 59.) Obviously, inquiry about the District's policies in March 2021 and updates on Plaintiff's application for the service dog do not constitute a formal request for this accommodation. Lastly, there is no evidence that Plaintiff ever asked the District what additional steps he needed to take to have his request for the service dog be approved. To the contrary, there are many undisputed facts that Defendant conducted the interactive process in good faith and Plaintiff's caused its breakdown, *see supra*. Therefore, Plaintiff's argument, as well as his cross-motion and /or opposition fail for reasons described above.

> ## iii. *Plaintiff's arguments regarding Defendant's application of incorrect legal standard are not on point.*

It is unclear why Plaintiff dedicated a whole session to discussion of "adverse impact," because it is not an issue here. Furthermore, there is no issue in this matter that Plaintiff is a qualified person with disability in the meaning of the ADA. It is even less clear why in his cross-motion/opposition, Plaintiff argues a different cause of action from the one alleged in the Complaint. As discussed above, in the Complaint, Plaintiff alleges discrimination in violation of the ADA but in his brief, he argues a different cause of action, failure to accommodate. In violation of the ADA. (Exhibit 1.) To prove that Plaintiff was discriminated against by Defendant, Kim needs to prove that he suffered an adverse employment action which he did not. Failure to accommodate cause of action does not have the adverse employment action element but failure to accommodate in violation of the ADA cause of action was not pleaded in the Complaint. (Exhibit 1.)  Therefore, the first cause of action fails as a matter of law.

C.    **THE SECOND CAUSE OF ACTION FOR VIOLATION OF SECTION 504 OF THE REHABILITATION ACT (29 U.S.C. §794 ET SEQ.)**

   a.    **Defendant's Moving Brief - The Second Cause of Action for Violation of Section 504 of the Rehabilitation Act (29 U.S.C. §794 et seq.) Fails as a matter of Law.**

Plaintiff alleges that Defendant's refusal to grant Kim's reasonable accommodation for over two years, for no legitimate reason is a violation of Section 504 of the Rehabilitation Act. Plaintiff further alleges that Defendant's conduct was discriminatory. (Exhibit 1, ¶54.)  As shown below, these allegations do not have merit.

   1.  **Plaintiff did not suffer an injury in fact.**

To establish Article III [i.e., constitutional] standing, a plaintiff must show ("an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical", (2) "a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not… the result of the independent action of some third party not before the court', and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Davis v. Astrue, 874 F. Supp. 2d 856 (2012)*. Further, this Court's subject matter jurisdiction requires that Plaintiff have standing for each claim and each form of relief sought. *Davis v. Fed. Election Comm'n*,

**JOINT BRIEF-DEFENDANT MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

1    554 U.S. 724, 734 (2008.) Lastly, Plaintiffs must maintain their personal interest in the dispute at all

2    stages of litigation. *Bazile v. Fin. Sys. of Green Bay, Inc*. 983 F3d 274, 278 (7ᵗʰ Cir. 2020.)

3          Section 504 allows recovery of compensatory damages but does not allow compensation for

4    emotional distress. *Cumming v, Premier Rehab Keller, PLLC* 596 U.S. 142 S. Ct. (2022).

5    Here, Plaintiff was granted the accommodation he requested. (UMF 94.) Thus, he is not entitled to any

6    injunctive relief. Plaintiff's request for an injunction became moot because the issue is no longer 'live'

7    and he lacks a legally cognizable interest in the outcome. *Los Angeles City v. Davis*, 440 U.S. 625, 631

8    (1979.) Generally, compensatory damages are recoverable under the Rehabilitation Act. However,

9    Plaintiff did not suffer loss of wages or benefits, and there is no evidence of any medical expenses

10   Plaintiff incurred due to Defendant's actions. (UMF 20,21,103.) Thus, the only damages Plaintiff might

11   seek are compensation for emotional distress, which is not redressable under Section 504, and costs

12   associated with obtaining the service dog.

13         Out-of-pocket cost is generally recoverable under this section. However, there should be a

14   causal connection between the cost and Defendant's unlawful conduct.

15         Here, Plaintiff produced only two Uber receipts, one for a trip from Tustin to Santa Ana airport

16   on August 20, 2023, and another one from Sonoma County airport to Santa Rosa. This out-of-pocket

17   cost is apparently associated with his trip to the training with the service dog in August 2023.

18   (UMF104.) This cost is not recoverable for the reasons discussed below.

19         Plaintiff had been reluctant to get the service dog before his request for this special

20   accommodation was approved by the District. Kim cancelled training in December 2022 because he

21   had not obtained approval by that time. (UMF66-67.) Only after his request for the service dog had

22   been approved by the District, he attended to a CCI training in Northern California to be matched with

23   a service dog and incur the out-of-pocket cost. (UMF94, 95.) Obviously, Plaintiff took Uber to get to

24   the training because his request had been approved but not due to the alleged unreasonable delay in

25   granting his request. Lastly, even if Plaintiff's request were approved instantly, he would have to go to

26   the training and incur expenses associated therewith. Therefore, there is no causal connection between

27   these costs and Defendant's alleged unlawful conduct, and as a result, these costs are not recoverable.

28

Based on all discussed above, Plaintiff did not suffer any damages recoverable in this cause of action, and as a result, a no cognizable injury-in fact. Thus, he has no standing to sue for Violation of the Rehabilitation Act, and this cause of action shall be dismissed.

### 2. Defendant Did not Discriminate Against Plaintiff Due to His Disability.

The Rehabilitation Act is to be interpreted in accordance with the standards applied under the ADA. Thus, a plaintiff can establish a prima facie case under either statute by showing: (1) that he is an individual who has a disability within the meaning of the statute, (2) that an employer covered by the statute had notice of his disability, (3) that with reasonable accommodations, he could perform the essential functions of the position sought, and (4) that the employer had refused to make such accommodation. *Lyons v. Legal Aid Society*, 68 F.3d 1512, 515 (2d Cir. 1995.) Further, a 1992 amendment to the Rehabilitation Act states that "[t]he standards used to determine this section has been violated in a complaint alleging employment discrimination…shall be the standards applied under title I of the Americans with Disabilities Act of 1990" 29 U.S.C. §794(d).)

Like the ADA, to prove discrimination in violation of the Rehabilitation Act, Plaintiff needs to show that he suffered an adverse employment action. Here, discussed above.  Plaintiff did not suffer an adverse employment action, *see supra*.  Therefore, this cause of action fails as a matter of law.

### 3. Dealy in Granting Plaintiff's request for the Service Dog Was not a Denial of Reasonable Accommodations.

There is no issue of triable facts that the District provided Plaintiff with reasonable accommodation, the Equipment, before, and after Plaintiff obtained the service dog, *see supra*. Defendant was authorized by the ADA and Rehabilitation act to provide the accommodation of its choice. The Equipment has been a reasonable accommodation for Plaintiff, and Defendant was not obligated to grant Plaintiff's request for additional accommodation because the reasons Plaintiff wanted to have the service dog at work were the same the Equipment was installed for. (UMF 24, 26.)

Despite Plaintiff's lack of cooperation and obstruction of the interactive process, Kim's request for the service dog was granted promptly, just in a few weeks after Kim had provided the District a

1  doctor's note recommending him to have a service dog at work and agreed to discuss how the dog

2  would help him with his job. (UMF93-94.)

3      Therefore, the alleged delay in granting Plaintiff's request for the service dog which was due,

4  to Plaintiff's own fault does not constitute an adverse employment action or failure to accommodate

5  Plaintiff's disability.

6      Based on all stated above, Plaintiff's cause of action for violation of Rehabilitation act fails as

7  a matter of law.

8      **b. Plaintiff's Opposition or/and Cross-Motion to Second Cause of Action:**

9      **Defendant Violated Section 504 On the Same Grounds As Its Violation of**

10     **the ADA**

11     To state a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that (1)

12  he is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered

13  discrimination because of his disability. *Walton v. U.S. Marshals Serv.,* 492 F.3d 998, 1005 (9th Cir.

14  2007) (overruled on other grounds) (citing *Wong v. Regents of the Univ. of Cal.,* 410 F.3d 1052, 1058

15  (9th Cir.2005)). Courts utilize the same standards in ADA and Section 504 claims to determine whether

16  unlawful discrimination has occurred. *Livingston v. Fred Meyer Stores, Inc*., 388 F. App'x 738, 741, n

17  2 (9th Cir. 2010). Here, Defendant discriminated against Plaintiff in violation of 42 U.S.C. §

18  12112(b)(5)(A). This section of the ADA defines discrimination as failing to make a reasonable

19  accommodation to an otherwise qualified employee "unless such a covered entity can demonstrate that

20  the accommodate would impose an undue hardship on the operation of [its] business." *Id.*; *see also*

21  *Brown v. Potter*, 457 F. App'x 668, 671 (9th Cir. 2011).  As analyzed above the section regarding the

22  First of Action, there is no genuine dispute of fact as to any element of Plaintiff's Section 504 claim.

23  There is no dispute that Kim is disabled, that he is otherwise qualified for employment and that he

24  suffered discrimination when Defendant made him wait two years to grant his reasonable

25  accommodation request and only after receiving a claim notifying it was being sued.  Defendant admits

26  that it receives federal financial assistant and there is no undue hardship to grant Plaintiff's request.

27

28

### 1. Plaintiff has established all three elements of Article III standing, including that he suffered an injury in fact.[9]

Denial of reasonable accommodation is a concrete and particularized invasion of Plaintiff's legally protected interests under Title II of the ADA and Section 504. In *Armstrong v. Davis*, the Ninth Circuit held that "discriminatory treatment on account of [the plaintiffs'] disabilities in violation of both the ADA and the Rehabilitation Act . . . is sufficient to constitute an actual injury" to establish Article III standing. 275 F.3d 849, 857 & n.11, 864 (9th Cir. 2001), *abrogated on other grounds*. Courts "take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven Inc.*, 524 F.3d 1034, 1039-40 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)). Kim had standing when he filed the present lawsuit and continues to have standing because he seeks the equitable relief of policies and training to prevent the discrimination, he experienced from reoccurring with himself and other deaf staff. Further, there is a credible risk that accommodations will be withdrawn if Defendant is not under threat of legal action.[10]

### 2. Defendant's Delay in Granting Plaintiff's Reasonable Accommodation amounted to a denial

In attempting to defend the two years that it forced Kim to wait in limbo before granting his reasonable accommodation request, Defendant erroneously asserts that it could not grant the accommodation because: Plaintiff had not provided 1) the size or breed of the service dog or 2) "medical documentation describing his work restrictions and explaining why he needed a service dog to perform the essential functions of his position." Defendant's UMF 51, 65. If Defendant had requested breed or size information, it would have acted illegally. Federal regulations prohibit Defendant from denying an accommodation of a service dog based on size or breed of the dog. The

---

[9] Defendant does not discuss the other two elements: that the discrimination experienced by Mr. Kim is traceable to Defendant and the discrimination can be redressed by the Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff interprets this omission as a concession that they are not in dispute. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (holding that argument was conceded where the defendant failed to address it in its opposition).

[10] While any discussion of damages at this stage is premature, Plaintiff has incurred both monetary and compensable damages. UMF-Opp 103, 104.

DOJ addressed this issue in its Guidance To Revisions To ADA Regulation On Nondiscrimination On The Basis Of Disability In State And Local Government Services (Guidance To Revisions), which provides a section-by-section analysis and response to public comments concerning the revisions to its regulations that included 28 C.F.R. § 35.136. *See* 28 C.F.R. Pt. 35, App. A (determining it inappropriate and inconsistent with the ADA to prohibit certain breeds of dogs and finding "ability to exclude an animal whose behavior or history evidences a direct threat is sufficient to protect health and safety"). *See also* 28 C.F.R. § 35.104 (defining service animal as **any** dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability)(emphasis added). But Defendant did not ask for that information. Defendant produced no evidence that it asked Kim or Canine Companions for this information, ever. Had they simply googled the question, they would have discovered the answer on Canine Companion's website.[11] As to "medical documentation describing his work restrictions and explaining why he needed a service dog to perform the essential functions of his position," Kim provided the District two audiology reports with explanations from his medical providers about why the service dog would assist him. Defendant admits that Plaintiff provided all of the information requested of him. UMF-Opp 40. Its pretext for unlawful delay is not supported by any evidence that a trier of fact could reasonably rely upon.

### c. <u>Defendant's Reply-Second Cause of Action: Defendant Violated Section 504 On the Same Grounds As Its Violation of the ADA</u>

In his opposition/cross-motion, Plaintiff does not dispute that, to prevail on the cause of action for violation of Section 504 of the Rehabilitation Act, Plaintiff needs to prove that Defendant discriminated against Plaintiff. However, as discussed in Defendant's moving brief and reply, all Plaintiff's discrimination claims, including for violation of Section 504, fail as a matter of law because Plaintiff's did not suffer an adverse employment action, *see supra*. Furthermore, Plaintiff's argument that he has Article III standing for this cause of action is meritless, as well. As discussed in the opening brief, Plaintiff has no standing because there is no evidence that he suffered compensatory damages

---

[11] The website states, "**Q: What breeds of dog does Canine Companions use? Answer** All dogs in the program are Labrador Retrievers, Golden Retrievers or crosses of the two. All volunteer puppy raisers need to be flexible regarding gender, breed and color to assure that every puppy finds a home quickly and efficiently." UMF-Opp 40, 59, 68; *see also FAQs*, Canine Companions,  http://canine.org/about/faqs/ (last visited Sept. 3, 2025).

**JOINT BRIEF-DEFENDANT MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

recoverable for violation of the Rehabilitation act, *see supra*. Obviously, attorney's fees and costs of the lawsuit while might be recoverable, are not compensatory damages. Furthermore, Plaintiff's comment that any discussion of damages is premature is ridiculous.  The parties completed discovery and will start preparation for trial shortly. Lastly, as discussed in the opening brief, Plaintiff's request for the hearing dog was granted, thus, his request for an injunction became moot. Furthermore, there is no single evidence of any risk that permission to bring the service dog to work will be withdrawn. Therefore, the risk is speculative and does not support Plaintiff's claim that he has standing. *Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 112 S.Ct.2130.) Furthermore, Plaintiff has no standing to enforce the interests of others if he has no personal stake in the relief thought. Here, his request for injunctive relief is moot, therefore he has no standing to enforce interest of others. Lastly, there are no sufficient allegations in the Complaint to understand  what "the equitable relief of policies and training to prevent discrimination he experienced means." Therefore, Defendant did not have sufficient notice of the relief Plaintiff sought, and this relief shall be disregarded on the Constitutional grounds. Based on all discussed in Defendant's opening brief and this Reply, this cause of action fails as a matter of law.

**D.    THE THIRD CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT [ CAL. GOV'T CODE §12940(A)] FAILS AS A MATTER OF LAW**

**a.    Defendant Moving Brief – The Third Cause of Action for Violation of California Fair Employment and Housing Act [Cal. Gov't Code §12940(a)] Fails as a Matter of Law**

For this cause of action Plaintiff alleges disability discrimination in violation of FEHA. (Exhibit 1, ¶61.) FEHA, like the ADA, requires a plaintiff to plausibly allege the following in order to state a prima facie claim of disability discrimination: (1) plaintiff suffers from a disability, (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to an adverse employment action because of the disability. *Jensen v. Wells Fargo Bank,* (2002) 85 Cal.App. 4th 345, 354, 102 Cal. Rptr. 2d 55. Under the FEHA, an adverse employment action includes conduct that is reasonably likely to impair employee's job performance or prospects for advancement or promotion… an adverse employment

1    action requires a substantial adverse change in the terms and conditions of the plaintiff's employment.

2    *Holmes v. Petrovich Development Com, LLC* (2011) 191 Cal.App.4th 1047, 1063.

3         Here, as discussed above, Plaintiff did not encounter any change in the terms and conditions of

4    his employment after he had requested the service dog. (UMF18-21.) Therefore, Kim did not suffer an

5    adverse employment action, and this claim fails.

6         Denial of reasonable accommodations can constitute an adverse employment under the FEHA,

7    which unlike the ADA, does not provide complete autonomy in choosing which reasonable

8    accommodation, when there are more than one, to offer an employee. *Wallace v. City of Stanislaus,*

9    (2016) 245 CaL.App.4TH 109, 134, 199 Cal Rptr.3D 462. However, an employee cannot make his

10   employer provide a specific accommodation if another reasonable accommodation is instead provided.

11   *Hanson v. Lucky Stores, Inc.,* 74 Cal.App4th 228, Cal.Rptr.2d 487.) A lawful accommodation of a

12   physical disability is an accommodation which enable the employee to work. *Wallance v. Cnty of*

13   *Stanislaus,* (2016) 245 Cal.App. 4th 134, 199 Cal.Rptr.3d 462.

14   Here, there is no triable issue of material facts that Defendant provided Plaintiff with another reasonable

15   accommodation, the Equipment and Plaintiff was able to perform the essential functions of help of this

16   accommodation. (UMF28.)  There is no triable issue of material facts that Plaintiff requested the service

17   dog for the same reasons, safety and awareness of surrounding, the Equipment had been installed.

18   (UMF24-26.) Therefore, under the FEHA, the District was not obligated to provide Plaintiff with an

19   additional accommodation he requested, to allow the service dog at work but the District granted

20   Plaintiff's request after completion of the interactive process while it generally was not obligated to do

21   so. Consequently, the alleged delay in granting Plaintiff permission to bring the service dog to work

22   was not a denial of reasonable accommodation to Plaintiff and as result an adverse employment action,

23   a necessary element of his discrimination claim.

24        Based on all stated above, Plaintiff's cause of action for disability discrimination in violation of

25   the FEHA fails as a matter of law.

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     **b.** **Plaintiff's Opposition or/and Cross-Motion to Third Cause of Action: Violation of California Fair Employment and Housing Act: Disability Discrimination**

"To state a FEHA claim, a plaintiff need only "show that: he or she was a member of a protected class; was qualified for the position he sought; suffered an adverse employment action, and there were circumstances suggesting that the employer acted with a discriminatory motive." *Rope v. Auto-Chlor System of Washington, Inc*., 163 Cal. Rptr. 3d 392, 410 (2013) (overturned on other grounds) (citing *Jones v. Department of Corrections and Rehabilitation,* 62 Cal. Rptr. 3d 200, 209 (2007). An employer's failure to accommodate a disabled employee must be considered in evaluating a cause of action for FEHA disability discrimination. *Zamora v. Sec. Indus. Specialists, Inc.,* 285 Cal. Rptr. 3d 809, 836 (Ct. App. 2021) ("may we consider allegations that SIS failed to accommodate Zamora's disability . . . in addressing his disability discrimination claim? . . . the answer is yes . . . the employer's alleged failure to accommodate . . . and failure to engage in interactive process . . . [are] components of the disability discrimination.") It is well settled that adverse treatment that "materially [affects] the terms, conditions, or privileges of employment" and is "reasonably likely to impair a reasonable employee's job performance . . . falls within the reach of the antidiscrimination provisions of sections 12940(a) and 12940(h)" *Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1054-1055). Further, both the United States Supreme Court and California appellate courts have held that a defendant's failure to follow its own policies or procedures may provide evidence of pretext. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.* (1977) 429 U.S. 252, 267 (a departure from procedures "might afford evidence that improper purposes [played] a role" in termination); *Moore v. Regents of Univ. of California*, 206 Cal. Rptr. 841 860 (Ct. App. 2016) ("The record discloses evidence from which a reasonable fact finder could conclude that Kennedy failed to follow Defendant's stated procedures with respect to layoffs occurring during a restructuring when she not only eliminated Moore's position, but terminated Moore's employment."). As set forth at length in the preceding sections, Mr. Kim is a qualified individual with a disability. On the question of adverse action, there is no doubt that the failure to accommodate an employee in such a way that endangers his safety and the

safety of children in his care, materially affects the conditions of his employment, and impedes his professional duty to protect the children in his care, qualifies as "adverse."

### c. Defendant's Reply- Third Cause of Action: Violation of California Fair Employment and Housing Act: Disability Discrimination

For this cause of action, Plaintiff failed to present single evidence to support his position. Therefore, his cross-motion and/or opposition are not viable. Furthermore, Plaintiff cites *Yanowitz, see supra,* which was overruled years ago. In addition, Plaintiff failed to present a single argument supported by proper authorities of why the alleged delay in granting Plaintiff's request for the hearing dog without any material change in the terms and conditions of his employment constitutes an adverse employment action in violation of the FEHA. Therefore, Plaintiff's opposition shall be disregarded, and Defendant's opening brief remains unopposed. As such, this cause of action fails as a matter of law.

### E.    THE FOURTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT [ CAL. GOV'T CODE §12940(M)] FAILS AS A MATTER OF LAW

#### a. Defendant Moving Brief–The Fourth Cause of Action for Violation of California Fair Employment and Housing Act [Cal. Gov't Code §12940(M)] Fails as a Matter of Law

There are three elements in a Defendant Moving Brief failure to accommodate action: '(1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability (*Hernandez v. Rancho Santiago Cmty. College Dist.,* (2018) 22Cal.App.5th 1187, 1193-1194 [232 Cal.Rptr.3d 349].) Further, FEHA does not obligate an employer to choose the best accommodation of a specific accommodation a disabled employee or applicant seeks. *Hanson v. Lucky Stores*, Inc. (1999) 74 Cal.App. 4th 215, 228.

Assuming the employee is disabled, the employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it established through undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the

employee qualification for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal process broke down because the failed to engage in discussion in good faith. *Jensen v. Wells Fargo Bank,* (2000) 85 Cal.App.4th 245, 263.

### 1.  Plaintiff was offered reasonable accommodations

Plaintiff alleges that the two-year delay in granting him a permission to bring the service dog to work is de facto a denial of reasonable accommodations. These allegations do not have merit. As discussed above, there is no triable issue of material facts that Plaintiff was provided with an alternative accommodation, the Equipment, before, at the time he was waiting for the permission, and thereafter. There is no triable issue of material facts that  the District was not obligated to grant Plaintiff's request for the service dog, *see supra*. However, Plaintiff's request for the service dog was granted after completion of the interactive process. (UMF 94.) Due to the fact that Plaintiff was provided with reasonable accommodations at all times during his employment with Defendant, this cause of action fails as a matter of law.

### 2.  The requested accommodation was not available.

An Employee is not liable for failure to accommodate a disabled employee if the requested accommodation is not available. The employer is not liable if there was no vacant position for which the employee was qualified. *Prilliman v. United Air Lines, Inc*., (1997) 53 Cal.App.4th 935, 950-951. Here, there is no issue of material facts that Plaintiff could not obtain a service dog from CCI before the end of December 2022. (UMF61.) Therefore, the requested accommodation was not available beforehand. There is no triable issue of material facts that neither the District nor Plaintiff was aware of any additional accommodation suitable for Plaintiff except the service dog.  (UMF 15, 43-44.) Lastly, there is no causal connection between the alleged delay in granting Plaintiff's request and Kim's inability to bring the dog to work at least until the beginning of 2023. Kim could not obtain the dog earlier, regardless of whether Defendant granted or denied Kim's request. Thus, Defendant's is not liable to the alleged failure to accommodate at least until the beginning of 2023.

### 3. To grant Plaintiff's request without knowing the dog's breed and size would impose an undue hardship on Defendant

Employers must make reasonable accommodations to the disability of an individual unless the employer can demonstrate that doing so would impose an 'undue hardship. *Prilliman v. United Air Lines, Inc*., (1997) 53 Cal.App.4th 935, 950-951.

Until Plaintiff was matched with the service dog in August 2023, there was no possibility for Defendant to obtain information about the dog bread, and size. Because a lot of different risk factors were involved in allowing an animal to be in an elementary school, including allergies, fear factor, improper interaction of students with the animal, etc., it was extremely difficult if not impossible for the District to approve something it did not know what it was giving an approval for. (UMF 34, 70.) Therefore, allowing Kim to bring a dog on campus without knowledge of specific information would impose an undue hardship to the District which is further evidenced by Plaintiff's wife refusal to have the service dog at home without knowing the dog's size, breed, and other characteristics. (UMF97.) Thus, Defendant was not obligated to approve Plaintiff's request until it obtained all information necessary to make an informed decision and this cause of action fails as a matter of law.

### 4. Plaintiff failed to engage in the interactive process in good faith.

The employee must initiate the interactive process unless his or her disability and the resulting limitations are obvious. *Swanson v. Morongo Unified School Dist.,* (2014) 232 Cal.App.4[th] 954, 969. Here, Plaintiff's disability was not readily apparent. He had previously been provided with the Equipment as a reasonable long before he made his request for the service dog and was able to perform the essential functions of his position with this accommodation. According to Kim's explanations, the service dog was needed for the same reasons the Equipment was installed. (UMF 24-26.) Therefore, it was unclear why Plaintiff needed additional accommodation for the same underlying disability.

The interactive process was necessary to determine how the service dog would enable Plaintiff to perform the essential functions of his position that is, the purpose of the interactive process. (UMF48.) However, Plaintiff failed to engage in the interactive process in good faith. First, he failed to initiate the interactive process himself assuming that permission had been granted based on a vague email from

a District's employee. (UMF 41, 46, 47.) He did not bother to make further inquiries.  Second, Plaintiff failed to engage in the meaningful interactive process thereafter.

After the District received an update that the second interview had been scheduled for Kim at CCI, Defendant initiated the interactive process on its own.  From March 2022 to July 2023, Defendant conducted five interactive process meetings with Plaintiff. (UMF 49,62,72, 85,94.) However, Plaintiff refused to discuss his restriction or explain how the dog would assist him to perform the essential functions of his job, and despite several reminders, he failed to present the requested medical documentation until the fifth interactive process meeting which took place on June 20, 2023. In addition, he insisted on the accommodation he requested, the service dog, and refused to consider alternatives, therefore Plaintiff caused a breakdown in the interactive process.  (UMF50, 63, 73, 75, 86, 94, 43,44, 64, 76, 78-80.)

The Fair Employment and Housing Act requires a disabled employee to provide "reasonable medical documentation confirming the existence of the disability and the need for reasonable accommodation." Reasonable medical documentation includes "a description of why the employee needs a reasonable accommodation…to perform the employee's job duties. Cal. Code Regs., tit. 2 §11069.

Here, Kim provided medical documentation describing his disability but failed to provide medical documentation describing his work restrictions or why the service dig would be beneficial for Kim at work until June 2023. (UMF 54,87, 89, 93.) The documentation the District was provided with before June 2023 was not sufficient for the District to make a determination whether to grant or deny Plaintiff's request for the service dog. Several times the District asked Plaintiff to provide addition medical documentation after receiving two letters in March-April 2022. Furthermore, since 2022 Plaintiff had an attorney who was helping him with the interactive process. Any reasonable attorney in California would or should have advised Plaintiff to obtain medical documentation describing his work restrictions or how Plaintiff would benefit from having the service dog at work. However, Plaintiff presented another letter only after the Ditrict's counsel got involved.  Obviously, Plaintiff's failure to provide the requested medical documentation in a timely matter, and his refusal to discuss his work restriction and need for the dog at work, as well as his insistence on the preferred accommodation,

caused a breakdown in the interactive process and as a result, a delay in granting Plaintiff's request for the service dog.

Employers and employees both have a duty to engage in the interactive process in good faith. While employers must consider the employee's preference, the employer has the right to implement an accommodation that is effective in allowing the employee to perform the essential functions of the job. Cal. Code Regs., tit. 2 §11069. Court has held that an employee caused the breakdown in the interactive process when an employee insisted on a single accommodation and refused to discuss other possible accommodations. *Barton v. Unity Health System,* 758 Fed.Appx. 83, 85 (2019); *Yochim v. Carson,* 935 F3d 586, 591-592 (2019).

There is no issue of triable facts that the District conducted the interactive process in good faith. At the interactive process meeting on March 21, 2022, December 2, 2022, February 10, 2023, and April 14, 2023, The District attempted to obtain information regarding Plaintiff's work restrictions and an explanation of why the service dog was necessary for Kim to perform the essential functions of his job. However, Kim was unwilling to have a discussion regarding other possible accommodation and had instead insisted that the District agreed to allow a service dog at work. (UMF91.) Plaintiff's insistence on one accommodation, refusal to discuss how the service dog would help him to perform the essential functions of his position, and failure to provide sufficient documentation of his work restrictions, constitutes refusal to engage in the interactive proves in good faith.

Base of all stated above, Plaintiff's cause of action for failure to accommodate fails as a matter of law and Defendant is entitled to summary judgment on this claim.

**b.** **Plaintiff's Opposition or/and Cross-Motion–Fourth Cause of Action:**
   **Violation of California Fair Employment and Housing Act-Unlawful Denial**
   **of a Reasonable Accommodation**

To establish a prima facie case for failure to accommodate under the FEHA, a plaintiff must show: (1) that he suffers from a disability covered by FEHA; (2) that he is otherwise qualified to do his job; and (3) that defendant failed to reasonably accommodate his disability. *Jensen*, 102 Cal. Rptr. 2d at 63. "Unlike for a claim for employment discrimination, a plaintiff need not establish that an adverse employment action was caused by the plaintiff's disability because, as stated, a FEHA claim

for failure to accommodate is an independent cause of action." *Id. (citing Perez v. Proctor & Gamble Mfg. Co.*, 161 F. Supp. 2d 1110, 1119 (E.D. Cal. 2001)). Where a necessary accommodation is obvious, where the employee requests a specific and available reasonable accommodation that the employer fails to provide, or where an employer participates in a good faith interactive process and identifies a reasonable accommodation but fails to provide it, a plaintiff may sue under section 12940(m). *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 983, 83 Cal. Rptr. 3d 190, 218 (2008). The analysis for the denial of a reasonable accommodation claim under FEHA is substantially similar to Kim's ADA claim. He has provided evidence beyond dispute that he is a person with a disability, he is otherwise qualified to do his job, and Defendant's unnecessary years long delay in granting his reasonable accommodation request amounted to a denial. *See supra,* Plaintiff's section regarding Defendant's failure to accommodate Plaintiff in violation of the ADA.

### c. Defendant's Reply-The Fourth Cause of Action for Violation of California Fair Employment and Housing Act [Cal. Gov't Code §12940(M)] Fails as a Matter of Law

For this cause of action, Plaintiff does not introduce a single additional argument or evidence to support his position and refers to his argument presented for his ADA claim. Plaintiff's major argument is the delay in granting permission to bring the service dog to work amounts to denial. This argument fails for reasons stated above, *see supra*. Furthermore, in the opening brief, Defendant presented multiple arguments which remain unopposed: unavailability of the requested accommodation, undue hardship to grant the accommodation without evaluation fitness of a specific dog to the elementary school environment, reasons why Plaintiff was refusing to discuss how the dog would help him to perform essential functions of his position, why Plaintiff insisted on one single accommodation, etc. Therefore, there is no basis for Plaintiff's cross-motion and opposition and Defendant is entitled to judgment as a matter of law.

### F.   THE FIFTH CAUSE OF ACTION FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT [ CAL. GOV'T CODE §12940(N; CAL. CODE. REGS. § 11069(A))] FAILS AS A MATTER OF LAW 11069(A)]

**G.**

    **a.**   **<u>Defendant Moving Brief-The Fifth Cause of Action for Failure to Engage In The Interactive Process In Violation of California Fair Employment and Housing Act [ Cal. Gov't Code §12940(N; Cal. Code. Regs. § 11069(A))] Fails as a Matter of Law 11069(A)]</u>**

    **1.**   **Defendant Conducted the Interactive Process with Plaintiff in Good Faith.**

Two principles underline a cause of action for failure to provide a reasonable accommodation. First, the employee must request accommodation. Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith." *Gelfo v, Lockheed Martin Corp*., (2006) 140 Cal.App.4 p. 54.

As discussed above, Defendant conducted five interactive process meetings with Plaintiff to assess and determine reasonableness of Plaintiff's request for the service dog. In addition, it spent hours on evaluating the risk involved in having a service dog in an elementary school. For these reasons, the District conducted internal assessment which included multiple contacts with CCI and the site management to ascertain risk and feasibility to have a service dog at an elementary school. (UMF 34,40,68,)

As discussed above, Plaintiff caused breakdown in the interactive process by refusing to provide the required medical documentation until June 2023, refusing to discuss how the service dog would help him to perform the essential functions of his position, and insisting on having the service dog as a matter of rights. Therefore, the District cannot be held liable for the delay in granting Plaintiff's request for the service dog or for the alleged failure to engage in the interactive process in good faith.

    **2.**   **Plaintiff's Claim for Failure to Engage in the Interactive Process is Precluded Because the Requested Accommodation was Granted.**

The fact that employer reasonably accommodated Plaintiff's disability precludes the claim that it failed to engage in the interactive process. The success of this process is borne out by the fact that, in the end, [Wilson] got exactly what he wanted – albeit after a series of temporary accommodations. *Wilson v. County of Orange,* (2009) 169 Cal.App.4[th] 1185.

Here, as discussed, Plaintiff got exactly what he wanted, his request to bring the service dog to work was approved after he provided the required medical documentation and agreed to discuss his work restrictions. (UMF93-94.) In addition, Kim was provided with a reasonable accommodation, the Equipment, even before he made his request for the service dog. (UMF9-11.) While the District was not obligated to provide Plaintiff with the requested accommodation before completion of the interactive process, if ever, the Equipment can be considered as a temporary accommodation for Plaintiff until the completion of the interactive process which was prolonged due to Plaintiff's own fault. Therefore, this claim is precluded for the reasons discussed above.

Based on all discussed above, this cause of action fails as a matter of law.

### b. Plaintiff's Opposition or/and Cross-Motion - The Fifth Cause of Action for Failure to Engage In The Interactive Process In Violation of California Fair Employment and Housing Act [ Cal. Gov't Code §12940(N; Cal. Code. Regs. § 11069(A))] Fails as a Matter of Law 11069(A)

FEHA provides a separate and distinct cause of action for employees whose employers fail to engage in the interactive process. This provision does not require proof of the elements required by the ADA. Gov. Code, § 12940, subd. (n); *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.,* 83 Cal. Rptr. 3d 190, 217 (2008). A claim for failure to engage in the interactive process under FEHA requires "an employer ... to fail to engage in a timely, good faith, interactive process with the employee ... to determine *effective* reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee ... with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n) (emphasis added). "The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively. Ritualized discussions are not required." *Hernandez v. Rancho Santiago Cmty. Coll. Dist.*, 232 Cal. Rptr. 3d 349, 353 (Ct. App. 2018) No magic words are required to request reasonable accommodation. An employer's obligations are sufficiently triggered once they "become aware of the need." *Humphrey v. Mem'l Hosps. Ass'n,* 239 F.3d 1128, 1137 (9th Cir.2001); *Rowe v. City & Cnty. of San*

1  *Francisco*, 186 F. Supp. 2d 1047, 1051 (N.D. Cal. 2002); (What matters under the ADA are not

2  formalisms about the manner of the request, but…whether the employer can be fairly said to know of

3  both the disability and desire for an accommodation.)

4      Defendant admits it understood Kim's March 13, 2021 email as a request for reasonable

5  accommodation. Defendant had an immediate obligation to engage in the interactive process. It failed

6  to do so. Instead, it waited twelve months to first state it wanted to schedule an interactive process

7  meeting, letting Kim proceed under the impression that his request had been granted. Defendant then

8  denied Kim's request repeatedly, without offering any alternate accommodations. It only relented two

9  years after the initial request and only when it received notice of legal action.

10      Nor is it relevant that Kim did not have the service dog in his possession at the time of the

11  request. Canine Companion informed Defendant that it would not place a service dog with Kim until

12  he had approval to bring his service dog to work. UMF-Opp 40, 59, 68. *Prilliman v. United Air Lines,*

13  *Inc.*, 62 Cal. Rptr. 2d 142, 150 (Ct. App 1997) involved two airline pilots' reasonable accommodation

14  requests for reassignment based on their disability. The Court affirmed that an employer has a duty to

15  proactively explore suitable alternatives but, on the facts of that case, reassignment to a position that

16  does not exist would be an undue hardship. *Id.* Distinguishing *Prilliman* from the facts of this case

17  does not require a detailed analysis. Unlike in *Prilliman*, here the undisputed facts demonstrate that

18  the accommodation did exist and it was reasonable. Defendant simply chose not to grant it.

19      Defendant's argument that it would be an undue hardship to grant Plaintiff's reasonable

20  accommodation without knowing the breed and size of the service dog is specious. First, federal

21  regulations forbid contemplation of breed when considering a service dog. 28 C.F.R. § 35.136.

22      Second, Defendant never asked for this information, neither in their communications with

23  Canine Companions nor with Plaintiff. UMF-Opp 40, 59, 68. Had they asked, they would have learned

24  that Canine Companions only uses labradors and Golden Retrievers, which is advertised clearly on

25  their website. *Id.* That Defendant never asked for this very basic information is evidence of its bad

26  faith in the interactive process. *See, e.g., Humphrey,* 239 F.3d at 1137 (9th Cir. 2001). Defendant

27  admitted there was no safety threat and no undue hardship. UMF-Opp 34. And this Circuit has held

28  that a school cannot deny a reasonable accommodation for a service dog because of allergies, which

1    Defendant never raised in any event. *Sullivan By & Through Sullivan v. Vallejo City Unified Sch.*

2    *Dist.*, 731 F. Supp. 947, 961 (E.D. Cal. 1990).

3        **c.    Defendant's Reply-The Fifth Cause of Action for Failure to Engage In The**

4             **Interactive Process In Violation of California Fair Employment and Housing**

5             **Act [ Cal. Gov't Code §12940(N; Cal. Code. Regs. § 11069(A))] Fails as a**

6             **Matter of Law 11069(A)**

7        For this cause of action, Plaintiff's discusses mostly the alleged Defendant's failure to

8    accommodate Plaintiff.    Kim does not explain why five interactive process meetings with him

9    constitute the alleged failure to engage in the interactive process and why they were not conducted in

10   good faith. In addition, Plaintiff does not explain why *Wilson*, [preclusion of failure to engage in the

11   interactive process is precluded if the requested accommodation was granted at the end], *see supra*, is

12   not applicable. Lastly, Plaintiff failed to present evidence that Plaintiff did not cause breakdown in the

13   interactive process despite providing a doctor's note describing his restriction only in June 2023,

14   refusing to discuss his restriction despite numerous requests, and insisting on only one accommodation,

15   the service dog; or discuss these important issues. Therefore, Defendant's arguments remain

16   unopposed.

17       As discussed above, Plaintiff's inquiry about the District's policies on March 21, 2021, was not

18   a request for accommodations *see supra*. No reasonable person would assume otherwise. Furthermore,

19   there is no evidence that Kim made any effort to clarify the situation. There is no evidence that he ever

20   contacted the District and asked whether he needed additional documentation or took additional actions

21   before his request would be approved.  He decided that it was a matter of his rights to bring the dog to

22   work and he did not need approval. (UMF 76.) Apparently, that was the reason that he was informing

23   the District of the progress of his application for the hearing dog but did not bother to take any actions

24   to complete the interactive process until June 20, 2023. (UMF 94.)

25       Possession of the service dog is very relevant for the reasons discussed in the opening brief and

26   reply to other causes of action, *see supra*. Without having an actual dog, the accommodation Plaintiff

27   requested was illusory because Defendant could not evaluate a non-existent dog for fitness ino an

28   elementary school environment. Furthermore, the District could not inquire about the dog's size and

breed because it was not legal, however, it was perfectly legal to evaluate a specific dog for fitness to be around 4 or 5 year old children on a regular basis. It is obvious that many risk factors involved in having an animal around 6 to 10 young children whose conduct toward the animal might be less than perfect.  Those factors were nonexistent in the office environment Strife worked. Lastly, in *Strife*, Plaintiff had a service dog before requesting accommodations which could be brought to work the next day after the approval, the dog could be brought to work on a trial basis or evaluated for fitness. This accommodation existed and was available for Strife. Therefore, Plaintiff's argument that he could not get a dog before Defendant approved his request do not have merit. The true reason he could not leave the dog at home while at work was that his wife did not consent. (UMF 97.)

For the reasons discussed above, Plaintiff's cross-motion/opposition, unsupported by a single undisputed fact shall be denied.

## H.    THE SIXTH CAUSE OF ACTION FOR FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION [ CAL. GOV'T CODE §12940(K)] FAILS AS A MATTER OF LAW 11069(A)]

I.

### a.    Defendant Moving Brief-Sixth Cause of Action: Plaintiff is Entitled to Summary Judgment on His Claim for Failure to Prevent Discrimination

In his Complaint, Plaintiff does not allege any facts supporting his boilerplate allegations of harassment and retaliation in the sixth cause of action therein. (Exhibit 1 ¶ 90.) There are no separate causes of action for harassment or retaliation in the (Complaint, Exhibit 1.) Further, there is no allegations or evidence that Defendant retaliated against Plaintiff. Therefore, this cause of action is de facto only for failure to prevent discrimination.

A Plaintiff seeking to recover on a failure to prevent discrimination claim under FEHA must show that (1) [she] was subjected to discrimination; (2) defendant failed to take all reasonable steps to prevent discrimination; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm. *Ravel v. Hewlett-Packard Enterprise, Inc*, 228 F.Supp. 3d. (9 cr. 2017).

1   Courts have interpreted a failure to prevent discrimination claim essentially derivative of a FEHA

2   discrimination claim (denying defendant summary judgment on failure to prevent discrimination claim

3   given that plaintiff's FEHA discrimination claim survives summary judgment. *Trujillo v. N. Cty.*

4   *Transit Dist*., (1998) 63 Cal.App.4th 280, 289).

5            Here, as discussed above, Plaintiff's claims of discrimination fail as a matter of law, therefore

6   his failure to prevent discrimination claim ultimately fails. Furthermore, the District implemented fair

7   and effective anti-discrimination policies and effective complaint process to prevent discrimination in

8   the workplace. (UMF106.)

            **b.  Plaintiff's Opposition or/and Cross-Motion-Sixth Cause of Action: Plaintiff**
9
            **is Entitled to Summary Judgment on His Claim for Failure to Prevent**
10
            **Discrimination**
11
12           Under the FEHA, employers have an *affirmative* duty to prevent discrimination in the

13   workplace. Cal. Gov. Code §12940(j)(1) ("An entity shall take all reasonable steps to prevent

14   harassment from occurring"). *Fiol v. Doellstedt,* 58 Cal. Rptr. 2d 308, 311 (Ct. App. 1996) ("under the

    FEHA, an employer has an affirmative and mandatory duty to prevent harassment from occurring").
15
    The failure to prevent is a separate cause of action and is successful where there is a finding that the
16
    underlying discrimination, harassment and/or retaliation in the workplace occurred. *Scotch v. Art*
17
    *Institute of California*, 93 Cal. Rptr. 3d 338, 367 (Ct. App. 2009); *Trujillo v. North County Transit Dist.*
18
    73 Cal. Rptr. 2d 596, 602 (Ct. App. 1998). Defendant admitted it failed to provide Kim with
19
    Defendant's reasonable accommodation policies. UMF-Opp 106.  Defendant admitted there was no
20
    investigation of Kim's reports of discrimination and failure to accommodate. UMF-Opp 15, 53, 106.
21
    Defendant admits it failed to engage in the interactive process for an entire year, for no discernable
22
    reason. On this record, Kim is entitled to summary judgment on his failure to prevent claim.
23
            **c.  Defendants Reply- Sixth Cause of Action: Plaintiff is Entitled to Summary**
24
            **Judgment on His Claim for Failure to Prevent Discrimination**
25
    For this cause of action, Plaintiff's ignores that his causes of action for discrimination fail as a matter
26
    of law, see supra.  Therefore, his claim for failure to prevent fails as a matter of law, as well.
27

28

**JOINT BRIEF-DEFENDANT MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

1

2

3

4    **J.    THE SEVENTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA**

5    **GOVERNMENT CODE §11135**

6    **a.    Defendant Moving Brief-The Seventh Cause of Action: Defendant's**

7    **Violated Section 1135 In Denying Plaintiff's Reasonable Accommodation**

8    Section 11135 of the California Government Code prohibits discrimination in state-funded or

9    state-administered programs and activities based on factors like race, religion, age, sex, and physical

10   or mental disability. Violations can occur when individuals are denied full and equal access to benefits

11   or are subjected to discrimination under such programs.

12   Here, as discussed above, there are no triable material facts that Plaintiff did not suffer discrimination

13   in violation of FEHA and as a result was not denied equal access to benefits. Therefore, this cause of

14   action fails as a matter of law.

15   **b.    Plaintiff's Opposition or/and Cross-Motion-The Seventh Cause of Action:**

16   **Defendant's Violated Section 1135 In Denying Plaintiff's Reasonable**

17   **Accommodation**

18   Section 11135 "is identical to the Rehabilitation Act except that the entity must receive State

19   financial assistance rather than Federal financial assistance.'" *Bassilios v. City of Torrance*, 166 F.

20   Supp. 3d 1061, 1084 (C.D. Cal. 2015) (citations omitted). "Section 11135 is also coextensive with the

21   ADA because it incorporates the protections and prohibitions of the ADA and its implementing

22   regulations." *Id.* The analysis is identical to that made above regarding Plaintiff's first and second

23   causes of action. Defendant does not dispute that it receives state funding. Nazir 59:23-60:1. There is

24   no genuine dispute of fact.  Defendant is liable under section 11135.

25   **c.    Defendant Reply- The Seventh Cause of Action: Defendant's Violated**
     **Section 1135 In Denying Plaintiff's Reasonable Accommodation**

26   Defendant agrees with Plaintiff that this cause of action is identical to the Rehabilitation Act

27   and the ADA because it prohibits discrimination. As discussed above in the opening brief, this cause

28   of action fails because Plaintiff's claim for discrimination ultimately fails. For this cause of action,

1  Plaintiff does not present any additional arguments, therefore, Plaintiff's motions remain unopposed.

2

3

4  **K.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT REGARDING**

5  **CERTAIN OF DEFENDANT'S AFFIRMATIVE DEFENSES.**

6  **a.   Defendant Moving Brief-Plaintiff is Entitled to Summary Judgment Regarding Certain of Defendant's Affirmative Defenses**

7  A party is entitled to move for summary judgment on affirmative defenses. FRCP 56 (allowing

8  a party to seek summary judgment on a "claim *or defense* "). (emphasis added); *E.E.O.C. v. Fred Meyer*

9  *Stores, Inc.,* 954 F. Supp. 2d 1104, 1112 (D. Or. 2013), *on reconsideration in part* (Sept. 19, 2013) (a

10  motion for summary judgment attacks the substance of defendant's affirmative defenses rather than

11  the form of the pleading). Defendant's affirmative defenses fall into two categories 1) not affirmative

12  defenses, and 2) not relevant to these claims.

13  First, Defendant's affirmative defenses of "failure to state a cause of action" (Number 1),

14  "Causation" (Number 3), "Legitimate non-discriminatory reasons" (Number 6), "Plaintiffs own acts or

15  omissions" (Number 8), "Anti-Discrimination Policy" (Number 9), "uncertainty" (Number 17, and

16  "Additional (unnamed) affirmative defenses (Number 13) are not affirmative defenses.  They merely

17  allege Plaintiffs have failed to meet their burden of proof. *See Zivkovic v. S. California Edison Co.*, 302

18  F.3d 1080, 1088 (9th Cir. 2002) (a defense which demonstrates that plaintiff has not met its burden of

19  proof is not an affirmative defense). *See also Gencarelli v. Twentieth Century Fox Film Corp*., 2018

20  WL 376664, at *6 (C.D. Cal. Jan. 11, 2018) (finding that "denials of Plaintiff's allegations or attacking

21  an element of a claim is not an affirmative defense"). They cannot be pled as affirmative defenses and

22  should be dismissed with prejudice.

23  Second, Defendant asserted two defenses that do not apply to the claims pled. The affirmative

24  defenses of "business necessity" (Number 5) and "job relatedness" (Number 7) defenses apply to

25  disparate *impact* claims, not a disparate *treatment* claim such a denial of a reasonable accommodation.

26  42 U.S.C. § 2000e-2(k)(2).("[a] demonstration that an employment practice is required by business

27  necessity may not be used as a defense against a claim of intentional discrimination."); *See also* Cal.

28

1   Code Regs. Tit. 2, § 11010(b) (business necessity is an affirmative defense to discriminatory impact) and 11010(c)

2   (job relatedness is permissible as a defense in employee selection cases). *See generally Watson v. Fort Worth*

3   *Bank & Tr.,* 487 U.S. 977, 979 (1988) (discusses these two defenses in discriminatory impact cases).

4   As Plaintiff did not assert a disparate impact claim, these affirmative defenses should be dismissed.

5          Similarly, Mitigation of Damages (Number 2) is relevant in a wrongful discharge cause of

6   action, not at issue here. *Parker v. Twentieth Century-Fox Film Corp.,* 3 Cal. 3d 176, 178 (1970). "Acts

7   or Omissions of third parties (Number 4) "fails as a matter of law, because the ADA is clear that a

8   public accommodation is responsible for its own violations of the ADA, and that such violations cannot

9   be contracted away." *Kohler v. Staples the Off. Superstore, LLC*, 291 F.R.D. 464, 470 (S.D. Cal. 2013)

10  (cleaned up). Finally, Defendant asserted "No Responsibility for Noneconomic Damages" (Number

11  11) pursuant to California Civil Code § 1431.2. This statute addresses the apportionment of liability for

12  damages in personal injury, property damage, or wrongful death cases involving multiple defendants.

13  Again, not present in the current lawsuit.

### b.  Defendant Opposition-Defendant Moving Brief-Plaintiff is Entitled to Summary Judgment Regarding Certain of Defendant's Affirmative Defenses

17         In addition to filing an opposition, the opposing party may respond to a motion for summary

18  judgment by filing a cross-motion for summary judgment in its favor. *Towner Mngt. Corp. v. Hartford*

19  *Accident & Indemnity Co.* (D. Md. 1985) 627 F. Supp. 170, 171-172. Cross-motion for summary

20  judgment often occurs when the parties generally agree as to the facts but disagree as to the conclusion

21  to be drawn or their legal significance. *Marathon Mfg. Co. v. Enerlite Products Corp.* (5th Cir. 1985)

22  767 F2d 214, 217.

23         Here, Plaintiff's cross-motion on defenses is based on facts totally different from and unrelated

24  to Defendant's moving papers facts and raises distinct and independent from Defendant's motion legal

25  issues. Therefore, Plaintiff's motion for summary judgment on certain of Defendant's affirmative

26  defense cannot be included in Plaintiff's cross-motion. Furthermore, the cross-motion on the

27  affirmative defenses is not sufficiently briefed. There is no comprehensive discussion supported by

28

undisputed facts in the motion which contains citation and a few conclusions without explanations or arguments. Such a briefing shall be disallowed, and Plaintiff's motion be denied.

In general, any matter not in issue under a simple denial of allegations in the complaint is an "affirmative defense" and must be specially pleaded as such in the answer. [See Saks v. Franklin Covey Co. (2nd Cir. 2003) 316 F3d 337, 350—affirmative defense is assertion raising new facts and arguments that, if true, will defeat plaintiff's claim, even if all allegations in complaint are true; *Wolf v. Reliance Standard Life Ins. Co.* (1st Cir. 1995) 71 F3d 444, 449—test is whether potential defense would bar right of recovery "even if the general complaint were more or less admitted to". This also includes matters on which, as a matter of substantive law, defendant usually has the burden of proof if the case goes to trial. Furthermore, if a defensive matter is not an affirmative defense, it need not be pleaded as part of the answer in order to be preserved. (Rutter's Guide, Federal Civil Procedure before Trial, 9th Circuit edition).

Here, Plaintiff alleges that affirmative defenses No. 1, 3, 6, 8, 9, and 13 are not affirmative defenses. However, Plaintiff failed to describe content of the defenses or even attached the Amended answer as an Exhibit. Plaintiff's Exhibit 61 contains only page two of the answer, which was amended, there no longer valid. Therefore, Plaintiff's motion for summary adjudication of those affirmative or not defenses shall be disregarded. Furthermore, even summary judgment on defense is granted, it will not affect Defendant's right at trial on matters which are no affirmative defenses, *see supra*. Therefore, Plaintiff will be able to raise those defenses at trial regardless of the outcome of the motion for summary judgment. Therefore, this section of Plaintiff's brief is useless.

Plaintiff's motion for summary adjudication of defenses No. 2, 4, 5, and 7 also does not contain any arguments and refers to unapplicable law. First, business necessity and job relatedness are defenses to claims of discrimination under the ADA, including the ones involving denial of denial of reasonable accommodations. 42 U.S.C. §12113(a). A failure to accommodate is a type of disability discrimination, not an impartial claim or a claim of intentional discrimination in the traditional sense, because it does not require proof of the employer's intent to discriminate. Instead, it involves an employer's failure to provide reasonable accommodations for an employee's disability. While a failure to accommodate can lead to an adverse action (like termination) and could be evidence in a separate disparate treatment

claim, the failure to accommodate itself is about the denial of a reasonable accommodation and the connection to the disability, not the employer's bad faith. Furthermore, mitigation of damages is applicable not only to a wrongful discharge cause of action but failure to accommodate if Plaintiff alleges that he suffered economic damages. In the Complaint, Plaintiff alleges economic damages, Exhibit 1, therefore this defense is applicable. In California Fair Employment and Housing Act (FEHA) cases, a defendant does not have automatic "no responsibility" for non-economic damages, but several legal doctrines can limit or eliminate their liability. A defendant may also reduce or defeat a plaintiff's claim for emotional distress, a form of non-economic damage, by proving that the plaintiff could have avoided some or all of the harm. While an employer can be held liable for employment discrimination caused by the acts or omissions of third parties, such as customers, clients, or vendors, someone with whom the employer has business or employment relationship, it is not liable for actions caused by Plaintiff's agent or employees. Here, Defendant had no relations with CCI whatsoever. It was Plaintiff who contracted with CCI to obtain the service dog. Therefore, CCI was Plaintiff's agent for whose actions Defendant is not responsible, for example, slow processing of Plaintiff's application, a long waiting list to obtain the dog, and very limited amount of training sessions, unreasonable requirements, etc. (UMF 39, 40, 45, 59, 61, 68, 74, 77, 95-97.)

For the reasons described above, Plaintiff cross-motion for summary judgment on defenses shall be denied in its entirety.

## IV.    PARTIES MEET AND CONFER EFFORTS

On July 31, 2025, the parties conducted the meet and confer process relative to this motion and Plaintiff's cross-motion pursuant to Local Rule 7-3 via Zoom. However, the parties were unable to resolve any of the issues that form the basis for the motions.  (Lukyanov declr. ¶ 5)

## V.    CONCLUSION

### a.  As Defendant's Conclusion

Based on all discussed above, Defendant's motion for summary judgment, or alternatively, for summary adjudication of issues raised therein, shall be granted and Plaintiff's cross-motion for summary judgment, or alternatively for summary adjudication shall be denied.

1

   **b.  Plaintiff's Conclusion**

2     For the reasons stated above, Plaintiff is entitled to summary judgment on his causes of

3 actions numbers 1-7; and affirmative defenses as set forth herein.

4

5 Dated: September 18, 2025     **OLIVAREZ MADRUGA LAW ORGANIZATION, LLP**

6                                             By:___/s/ Lana Lukyanov_____

7                                             Lana Lukyanov
                                              Attorneys for Defendant,
8                                             SANTA ANA UNIFIED SCHOOL DISTRICT

9

10

11 Dated: September 18, 2025          LAW OFFICES OF WENDY MUSELL PC
                                     McGUINNESS LAW GROUP, PC
12

13                                            By:___/s/ Wendy Musell_____

14                                            Wendy Musell
                                              Attorneys for Plaintiff,
15                                            David Kim

16

17

18

19

20

21

22

23

24

25

26

27

28