**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KIM,<br><br>                    Plaintiff,<br><br>        v.<br><br>SANTA ANA UNIFIED SCHOOL DISTRICT,<br><br>                    Defendant. | Case No.: 8:24-CV-00650 MEME-JDE<br><br>**ORDER GRANTING AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ORDER GRANTING AND DENYING IN PART PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES [DKT. NO. 46-1]** |

        Before the Court is the Motion for Summary Judgment filed by Defendant. Dkt. No. 46-1. For the reasons stated herein, the Court hereby GRANTS AND DENIES in part the Motion for Summary Judgment and GRANTS AND DENIES in part Plaintiff's Cross Motion for Summary Judgment on Affirmative Defenses.

## I.    Factual Background

Plaintiff David Kim is employed at Taft Elementary School by Defendant Santa Ana Unified School District ("SAUSD"). Kim was born Deaf with bilateral hearing loss and uses a cochlear implant. On March 13, 2021, Kim made a request via email to the Principal of Taft Elementary for an accommodation of bringing a hearing service dog to work to alert him of sounds and emergencies. On June 26, 2023, nearly two and a half years later, Kim was granted the accommodation. The parties dispute what happened during that two-and-a-half-year span. Kim alleges his request was reasonable, and SAUSD engaged in the interactive process in bad faith, while he engaged with SAUSD in good faith and provided all that was needed to grant his accommodation request that addressed his needs. Defendant SAUSD denies this allegation and asserts that Kim was engaging in bad faith, and SAUSD had already offered Kim a reasonable alternative accommodation that met his needs.

## II.   Procedural Background

On March 26, 2024, Plaintiff Kim filed a complaint in the U.S. District Court for the Central District of California against Defendant Santa Ana Unified School District. Dkt. No. 1. Plaintiff's complaint alleges seven causes of action: (1) Violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*; (2) Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*; (3) Violation of California Fair Employment and Housing Act, Cal. Gov't Code § 12940(a); (4) Violation of California Fair Employment and Housing Act, Cal. Gov't Code § 12940(m); (5) Failure to Engage in the Interactive Process in Violation of California's Fair Employment and Housing Act, Gov. Code § 12940(n); (6) Failure to Prevent Discrimination, Harassment and Retaliation in Violation of California's Fair Employment and Housing Act, Cal. Gov. Code § 12940(k); and (7) Violation of California Government Code § 11135. On June 20, 2024, Defendant filed a First Amended Answer to the Complaint. Dkt. No. 23.

On September 18, 2025, Defendant filed the instant, fully integrated Motion for Summary Judgment, which includes Plaintiff's opposition, Defendant's reply to Plaintiff's opposition, and Plaintiff's cross-motion for summary judgment on Defendant's affirmative defenses. Dkt. No. 46-1 ("Motion"). Defendant also filed evidentiary exhibits and a Joint Statement of Uncontroverted Facts

and Conclusions of Law. Dkt. Nos. 47, 48, 49. On November 6, 2025, the Court held a hearing on the Motion.

### III.    Applicable Law

#### A.    Motions for Summary Judgment

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Id.*

Where a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. *Id.* at 1102–03. In such cases, the nonmoving party may defeat the motion for summary judgment without producing anything. *Id.* at 1103. However, if a moving party carries its burden of production, the burden shifts to the nonmoving party to produce evidence showing a genuine dispute of material fact for trial. *Anderson*, 477 U.S. at 248–49. Under these circumstances, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal

quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the motion for summary judgment shall be granted. *Id.* at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. *Id.* 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

To carry its ultimate burden of persuasion on the motion, the moving party must demonstrate that there is no genuine issue of material fact for trial. *Nissan Fire*, 210 F.3d at 1102; *Celotex Corp.*, 477 U.S. at 323.

### B.    Americans with Disabilities Act (ADA)

The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* §

12112(b)(5)(A). The term "qualified individual with a disability" is defined as an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

Whether an accommodation request is reasonable "involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Mont. Med. Ass'n v. Knudsen*, 119 F.4th 618, 624 (9th Cir. 2024) (citation omitted). "An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations." Ineffective modifications therefore are not accommodations." *U.S. E.E.O.C. v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1110 (9th Cir. 2010) (quoting *Barnett,* 535 U.S. at 400) (emphasis in original).

An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation. *UPS Supply Chain Sols.*, 620 F.3d at 1110-11 (quoting *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002)). The EEOC Enforcement Guidance notes that "an employer must consider each request for reasonable accommodation," and that "[i]f a reasonable accommodation turns out to be ineffective and the employee with a disability remains unable to perform an essential function, the employer must consider whether there would be an alternative reasonable accommodation that would not pose an undue hardship." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001) (quotations omitted).[1]

Essential functions are "fundamental job duties of the employment position ... not [including] the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8).

---

[1] SAUSD claims that an "employer is not obligated to provide a disabled employee with an accommodation of his choice or the most effective accommodation, [the] employee is obligated to provide the employee only with a reasonable accommodation which is not necessarily the most effective one." *See* Motion at 28-29. While it is true that an employer is not obligated to provide the employee with an accommodation of the employee's choice, as discussed above, the employer still must provide an accommodation that is reasonable, and an "ineffective" accommodation will not reasonably accommodate an employee's needs. *See U.S. E.E.O.C. v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1110 (9th Cir. 2010) (quoting *Barnett*, 535 U.S. at 400).

An "undue hardship" is defined as "an action requiring significant difficulty or expense" in light of various factors. *See* 42 U.S.C. § 12111(10)(A), (B). "The undue hardship standard is used to determine whether it is too onerous for a particular employer to make a specific accommodation sought by a specific employee, given the employer's size, economic circumstances, and other relevant conditions." *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001).

"[N]otifying an employer of a need for an accommodation triggers a duty to engage in an 'interactive process' through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp*, 889 F.3d at 1095. "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Humphrey*, 239 F.3d at 1137. The interactive process "requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *UPS Supply Chain Sols.*, 620 F.3d at 1110 (quoting *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002)). "[T]he employer's obligation to engage in the interactive process ... continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Humphrey*, 239 F.3d at 1138.

"[T]here exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." *Snapp*, 889 F.3d at 1095. "[I]f an employer fails to engage in good faith in the interactive process, the burden at the summary-judgment phase shifts to the employer to prove the unavailability of a reasonable accommodation." *Id.* "[A]n employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000), *vacated on other grounds sub nom. US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

/ / /

### C. Section 504 of the Rehabilitation Act and Section 11135(a) of the California Code

In determining whether there is a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the standards under Title I of the Americans with Disabilities Act ("ADA") apply. *See McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000). "[T]here is no significant difference in the analysis of rights and obligations created by the two Acts, [Section 504 and the ADA]." *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098 (9th Cir. 2013) (citation omitted). California Government Code "Section 11135 'is identical to the Rehabilitation Act except that the entity must receive State financial assistance rather than Federal financial assistance.'" *Bassilios v. City of Torrance*, 166 F. Supp. 3d 1061, 1084 (C.D. Cal. 2015). Section 11135 prohibits denying individuals with physical and mental disabilities, among others, "full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." Cal. Gov't Code § 11135(a).

### D. California Fair Employment and Housing Act (FEHA)

The FEHA provides that it is unlawful to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of disability. Cal. Gov't Code § 12940(a). Furthermore, it is unlawful for an employer to fail to provide reasonable accommodations to an employee with a known disability. *See id.* § 12940(m)(1). And it is unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." *See id.* § 12940(n). Lastly, it is unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." *See id.* § 12940(k).

The two separate state claims for failure to accommodate and failure to engage in the interactive process are effectively the same requirements of the ADA claim. *See Kaur v. Foster Poultry Farms LLC*, 299 Cal. Rptr. 3d 433, 451-54 (Cal. Ct. App. 2022); *Lin v. Kaiser Found. Hosps.*, 728, 304 Cal. Rptr. 3d 820, 833 (Cal. Ct. App. 2023); *Wentworth v. Regents of Univ. of*

7

*California*, 326 Cal. Rptr. 3d 62, 77 (Cal. Ct. App. 2024) (quoting *A.M. v. Albertsons, LLC*, 100 Cal. Rptr. 3d 449, 455 (Cal. Ct. App. 2009)). For a Section 12940(m) claim for "fail[ure] to make reasonable accommodation for the known physical or mental disability of an applicant or employee," *see* Cal. Gov't Code § 12940(m)(1), the elements are "(1) the employee suffered a disability, (2) the employee could perform the essential functions of the job with reasonable accommodation, and (3) the employer failed to reasonably accommodate the employee's disability." *Allos v. Poway Unified Sch. Dist.*, 334 Cal. Rptr. 3d 425, 438-39 (Cal. Ct. App. 2025) (quoting *Nealy v. City of Santa Monica*, 184 Cal. Rptr. 3d 9, 19 (Cal. Ct. App. 2015)). And the undue hardship requirements are effectively the same too. *See Raine v. City of Burbank*, 37 Cal. Rptr. 3d 899, 905 n.6, 907 n.9 (Cal. Ct. App. 2006). For a Section 12940(n) claim for "fail[ure] to engage in a timely, good faith, interactive process with the employee … to determine effective reasonable accommodations … in response to a request for reasonable accommodation," *see* Cal. Gov't Code § 12940(n), "the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred." *Nealy*, 184 Cal. Rptr. 3d at 24. "The purpose of the interactive process is to determine what accommodation is required." *A.M.*, 100 Cal. Rptr. 3d at 455. Once a reasonable accommodation has been granted, then the employer has a duty to provide that reasonable accommodation. *Id.*

"A plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim [under the ADA, Rehabilitation Act, or FEHA]." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004)).

/ / /

/ / /

1    **IV.    Findings of Fact[2]**

2         The Court finds the following material facts are established for trial under Federal Rules of

3    Civil Procedure 56(a) and 56(g):

4         Since 2015, Taft Elementary School, as part of the Santa Ana Unified School District, has

5    had a Deaf and Hard of Hearing ("DHH") program servicing DHH students. UMF ¶ 1. As of June

6    2019, an advanced electronic messaging notification system, strobes, and other equipment

7    (collectively referred to as "the Equipment") were installed at Taft Elementary to alert DHH staff

8    and students of emergencies and other notifications. *See id.* ¶ 6.

9         On or around December 20, 2019, David Kim was hired to a permanent position of

10   Instructional Assistant DHH at Taft Elementary. *Id.* ¶ 17. Kim has held the same position since

11   2019. *Id.* ¶ 18. Kim is a qualified individual with a disability. *Id.* ¶¶ 22, 111. Kim decided to get a

12   service dog in 2020 or 2021. *Id.* ¶ 31. On March 13, 2021, Kim sent an email to Dr. Scott Barlow,

13   Principal of Taft Elementary, inquiring about the school policy on service dogs. *See* Ex. 3, Dkt. No.

14

15   _____

16

17   [2] The facts set forth below are taken from the parties' respective Joint Statement of Uncontroverted Facts.
     Dkt. Nos. 49, 49-1 ("UMF"). To the extent that any statements of fact are omitted, the Court concludes they
18   are not material to the disposition of this Motion. To the extent that any of the facts set below were allegedly
     disputed, the Court concludes that no actual dispute exists or that the adopted language resolves the dispute.

19   In making these Findings of Facts, the Court considered Defendant's Evidentiary Objections to Plaintiff's
     Evidence in Support of its Motion for Summary Judgment, Plaintiff's Objections to Defendant's Evidence in
20   Support of its Motion for Summary Judgment, and Defendant's Response and Opposition to Plaintiff's
     Objections to Evidence in Support of its Motion for Summary Judgment. *See* Dkt. Nos. 46-3, 46-10, 46-4
21   ("Objections). None of Defendant's and Plaintiff's objections are convincing as they are boilerplate
     objections based on lack of personal knowledge, lack of foundation, hearsay, authentication, opinion
22   testimony, and relevance that are duplicative of the summary judgment standard itself. *See Sandoval v.
     County of San Diego*, 985, F.3d 657,665 (9th Cir. 2021). Furthermore, the Ninth Circuit has recognized that
23   "a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as
     the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d
24   1032, 1036-37 (9th Cir. 2003) (quoting *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)
     (emphasis added)). In other words, when evidence is not presented in admissible form at summary judgment
25   but could be later presented in an admissible form at trial, a court may still consider the evidence for the
     purposes of summary judgment. *Id.* at 1037; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We
26   do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in
     order to avoid summary judgment."). For these reasons, to the extent the Court relies upon evidence to which
27   the parties object, the objections are OVERRULED. To the extent the Court does not, the objections are
     DENIED.

28

46-7. In the email, Kim explained that he had done some research on the process to obtain a service dog. He further stated as follows: "I have not started the process or applied. I wanted to ask you first before I commit to anything. … I wanted to make sure that I know and understand the school policy on service dog. If it is allowed at school, I would like to know what is required." *Id.* Kim then ended the email as follows: "Please feel free to throw in any thoughts. I'm sure there may be things I have not thought about. I wanted to make sure I plan things well before I commit to anything." *Id.* Later that day, Dr. Barlow responded: "I think we would need to explore this with the district, which may take some time." *Id.* Dr. Barlow then forwarded Kim's email to a few SAUSD employees and discussed the email with them via email. Ex. 60, Dkt. No. 47-56.

On May 5, 2021, Julie Reynoso, a Risk Management administrator with SAUSD, emailed Kim, advising him that she "was provided with your email regarding an accommodation for the use of a hearing dog." Ex. 4, Dkt. No. 46-8. She also "advise[d]" him to "start the process to apply for a hearing dog." *Id.*

After hearing from Reynoso, Kim began the separate application process to obtain a service dog. Throughout the process and over five separate times between May 2021 and March 2022, Kim advised SAUSD on his progress in obtaining a service dog and what information he needed from SAUSD for his service dog application. *See* Ex. 33, Dkt. No. 47-29 (updating SAUSD on his service dog application in June and August 2021); Ex. 34 (same but for October 2021); Ex. 35 (same but in January 2022); Ex. 38 (same but in March 2022). Kim formally sent in his application for a service dog through the company Canine Companion on September 30, 2021. UMF ¶ 43.[3]

The first step in the process of a formal accommodation request at SAUSD is an interactive process meeting. *See* Ebiner Decl. ¶ 19. On March 21, 2022, Kim had his first interactive process meeting with Risk Management Administrator Julie Reynoso, Principal Scott Barlow, and Executive Director of Risk Management Sara Nazir. *See* UMF ¶ 49; Nazir Dep. 124:14-125:1. At

---

[3] Kim made an accommodation request on March 13, 2021, but as discussed below, whether this request was a formal accommodation request that triggered the legal requirements under the ADA is genuinely disputed.

1    this meeting, Kim was asked for medical documentation explaining his restrictions and needs for

2    the dog. UMF ¶ 50. Kim explained he needed the dog to notify him of alarms, emergencies, or

3    sounds. *See id.* ¶ 52.

4            On May 23, 2022, an individual entered the campus without permission. Ex. 58, Dkt. No.

5    47-54. School officials and law enforcement were alerted to this and advised that the individual

6    likely had an incendiary device or bomb. *See* Barlow Dep. 157:14-22, 159:8-161:7. The individual

7    later hit multiple students with a car. *See id.* 156:7-12. At the time, Kim and some other DHH

8    teachers and students were already in their classrooms. *See* Barlow Dep. 163:1-164:16; 164:25-

9    166:7, 169:2-16, 180:3-14, 190:3-13. They were not alerted to this situation or advised to evacuate

10   by the Equipment or by any other means, even though non-DHH students were evacuated and

11   students who were not already on campus were told not to come onto campus and to act like it was

12   a fire drill. *See id.*; Barlow Dep. 162:4-164:16; *see also* Kim Dep. 59:1-19. Later, Kim, his students,

13   and other DHH teachers were evacuated when a SAUSD custodian told them to leave the building.

14   *See* Ex. 58, Dkt. No. 47-54.

15           On or about December 2, 2022, the second interactive process meeting took place with Kim,

16   Nazir, James Ebiner, the Executive Director of Employee Relations at SAUSD, and others. *See id.* ¶

17   62; Ebiner Dep. 163:3-9. After the meeting, Kim cancelled his service dog training scheduled for

18   December 2022. UMF ¶ 67. On or about February 10, 2023, the third interactive process meeting

19   took place with Kim, Ebiner, and Nazir. *See id.* ¶ 72. On or about February 21, 2023, Ebiner sent an

20   email to Kim explaining that to determine what reasonable accommodations SAUSD could provide,

21   Kim had to engage in discussion about how his ability to perform the essential functions of his

22   position were impacted by restrictions. *Id.* ¶ 81. Lastly, on or about April 14, 2023, the fourth

23   interactive process meeting took place with Julie Choi, Assistant Principal, Kimberly Garcia,

24   Principal, Kim, Kim's legal counsel, Ebiner, and Reynoso. *Id.*  ¶ 85; *see* Ex. 54, Dkt. No. 47-50.

25           From June to November 2022, Kim regularly communicated his status in obtaining a service

26   dog, offering to provide any information required, and went without an update on whether his

27   accommodation request for the service dog was approved. *See* Exs. 10, Dkt. No. 47-7 (email from

28   August 2022), 40 (email from September 7, 2022), 41 (email from the interim principal on

September 20, 2022 noting that Kim claims Nazir stopped the interactive process and that Kim wants to move forward), 42 (email from September 21, 2022, noting that Nazir seemed resistant to allowing a service dog and he provided what was needed), 44 (email from October 12, 2022, regarding update), 45 (email from November 9, 2022 noting Kim has not had an update since June).

On June 1, 2023, Kim's legal counsel advised SAUSD that he intended to bring a lawsuit under the Americans with Disabilities Act. *See* Ex. 59, Dkt. No. 47-55. On June 26, 2023, Kim was formally granted a reasonable accommodation to bring a service dog to work. *See* Ex. 53, Dkt. No. 47-49. After going through training, Kim obtained and brought his service dog to work starting in September 2023. UMF ¶¶ 100-02.

## V.    <u>Discussion</u>

SAUSD moves for summary judgment on Kim's claims only, contending that the undisputed facts do not support Kim's claims for disability discrimination. Kim cross-moves for summary judgment on SAUSD's affirmative defenses.[4] For the reasons discussed below, the Court GRANTS AND DENIES in part SAUSD's Motion for Summary Judgment and GRANTS AND DENIES in part Kim's Cross-Motion for Summary Judgment on Affirmative Defenses.

### A.    There Is A Genuine Dispute of Material Fact As To Kim's Failure to Accommodate Claim (Claim One).

The parties dispute whether the first cause of action for disability discrimination under the ADA is a disparate impact claim that would require showing an adverse employment action or a failure to accommodate claim that would not. *See* Motion at 19, 25-28. SAUSD contends that because Kim alleges a claim of relief for damages "[as] a direct result of [SAUSD's] discriminatory conduct," *see* Ex 1 ¶¶ 48-49, Dkt. No. 46-5, Kim is arguing a disparate-impact discrimination claim and not failure to accommodate claim. *See* Motion at 27-28. Kim contends that SAUSD relied on an

---

[4] Although in response to SAUSD's Motion on claims one through seven, Kim describes his arguments as "opposition or/and cross-motion," the notice of motion does not indicate that Kim is cross moving for summary judgment on those claims, *see* Dkt. No. 46, and the Court finds the "or/and" language ambiguous. Accordingly, the Court treats those arguments as arguments in opposition and does not find that Kim has also cross-moved on claims one through seven.

incorrect legal standard since Kim alleged a failure-to-accommodate claim. *See* Motion at 25. The Court finds it is a failure to make a reasonable accommodation claim under 42 U.S.C. § 12112(b)(5)(A). The claim for relief does not transform the claim into a disparate-impact discrimination claim, because Kim alleges sufficient facts to show he requested a reasonable accommodation for a service dog but SAUSD did not accommodate him, *see* Ex 1 ¶¶ 24-36, 49, Dkt. No. 46-5, and also alleges the standard relief for a failure-to-accommodate claim under Title I, injunctive relief, *see* Ex 1 ¶ 49, Dkt. No. 46-5; 42 U.S.C. § 12188(a)(1) (noting a private plaintiff can only sue for injunctive relief under the ADA). *See* Motion at 28. Thus, the Court will analyze the claim as a failure to accommodate.

"The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). Under Title I, a disabled employee seeking an employment accommodation under 42 U.S.C. § 12112(b)(5)(A)–(B) must "initially prove that the accommodation 'seems reasonable on its face.'" *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1036-37 (9th Cir. 2020) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002)). If the employee meets that initial burden, then the defendant "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* (quoting *Barnett*, 535 U.S. at 402).

### i. There is no dispute that Kim is a qualified individual with a disability.

A qualified individual with a disability is defined as an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." § 12111(8). It is undisputed that Kim is a qualified person with a disability. *See* Motion at 20, 32; *see also* Ex. 8, Dkt. No. 47-5 (explaining Kim's Deafness).

### ii. SAUSD has failed to show that it is undisputed that Kim failed to make an initial formal accommodation request on March 13, 2021.

SAUSD contends that Kim did not make a request for a reasonable accommodation on March 13, 2021, to start the interactive process, and "there was no evidence that Kim has ever

submitted a formal request." *See* Motion at 29-31, 43-44, 50. However, a reasonable jury could find that Kim made an initial formal request for an accommodation of a service dog on March 13, 2021, when Kim sent Principal Barlow an email asking about the school's policy on service dogs. *See* Ex. 3, Dkt. No. 46-7. Kim's request was for a service dog that would alert him to sounds, such as people calling his name and the classroom phone ringing. *See* Ebiner Dep. 200:3-13, 136:5-12; Kim Dep. 42:5-15. The jury could find that SAUSD knew this was an accommodation request because it treated it as such, stating internally that "[t]he process to accommodate a service dog is through the Interactive Process" and noting internally that they needed to "go through an interactive meeting that reviews [Kim's] job description and the restriction [Kim] has and the accommodation [] that may be utilized." *See* Ex. 60, Dkt. No. 47-56; *see also* Nazir Dep. 72:2-9 (noting that this email makes it seem understood that Kim was looking for a workplace accommodation). Further, Reynoso's response to Kim referred to his email as an "accommodation request." Thus, SAUSD has failed to show that it is undisputed that Kim failed to make a request for a reasonable accommodation.

### iii. SAUSD has failed to show that it is undisputed that SAUSD provided Kim with a reasonable alternative accommodation.

SAUSD argues that it provided a reasonable alternative accommodation in the form of an "advanced [electronic messaging] notification system, strobes, and other equipment." *See* Motion at 3, 21, 28-29 (collectively referred to as "the Equipment").

However, there is a genuine dispute of material fact as to whether these alternative accommodations were even provided and if they were, whether they were reasonable. First, SAUSD argues that they provided the Equipment as a reasonable alternative accommodation to all DHH students as of June 2019, *see* Nazir Decl. ¶ 5; Ex. 17, Dkt. No. 47-14, and specifically offered it to Kim as of January 2023, *see* Nazir Dep. 189:22-190:7, 297:13-19. But Kim was never provided in writing with an offer for any specific alternative accommodation instead of a service dog. *See* Nazir Dep. 296:13-297:6. And Sara Nazir also testified that from the entire time that Kim was asking for a service dog, starting in March 2021, she could not remember when and what alternative accommodations were offered and whether it was in writing. *See id.* 194:7-195:25, 222:8-17. And as of April 13, 2023, no other accommodation was communicated to Kim, although he had confirmed

1  he was willing to discuss all potential accommodations. *See* Ex. 52, Dkt. No. 47-48; Ebiner Dep.

2  188:2-10. Thus, when viewing the facts in a light most favorable to Kim, there is a genuine dispute

3  of material fact as to whether Kim was even offered a reasonable alternative accommodation.[5]

4      Second, even if Kim was offered the Equipment as a reasonable alternative accommodation

5  instead of a service dog, there is a genuine dispute as to whether this accommodation was effective

6  and thus reasonably accommodated Kim. *See* Motion at 24, 26-27.

7      SAUSD argues that the Equipment was effective because "none of DHH employees working

8  for the program, except Plaintiff, ever asked for additional accommodations," and because "Kim

9  asked permission to bring the service dog to work only after over 6 years of working for SAUSD

10  [without making any prior accommodation requests]." *See* Motion at 21, 29. However, the fact that

11  other DHH employees never asked for additional accommodations is inapposite, because the

12  question of reasonableness is an individualized, "fact-specific, case-by-case inquiry." *Knudsen*, 119

13  F.4th at 624. So, the Court only looks to how the Equipment impacted Kim's need for a service dog,

14  not others. And the Court only looks to Kim's current and future need for his accommodation, and

15  not his past because a "reasonable accommodation is always prospective." U.S. Equal Emp.

16  Opportunity Comm'n, *EEOC Enforcement Guidance on Reasonable Accommodation and Undue*

17  *Hardship Under the Americans with Disabilities Act*, No. 915.002 (Oct. 17, 2002). Therefore,

18  SAUSD's arguments are unavailing.

19      SAUSD then argues that Kim "failed to present [any] single evidence that the Equipment was

20  an ineffective accommodation," *see* Motion at 29, but Kim has presented enough evidence to create

21  a genuine dispute as to the effectiveness and thus reasonableness of the Equipment accommodation.

22

23  _____

24

25  [5] In Plaintiff's Statement of Undisputed Facts, Plaintiff argues that "[s]tatements made in Nazir's declaration
   that contradict her deposition testimony should be disregarded" under the sham declaration rule. *See* Motion

26  at 16 n.4. However, Plaintiff does not point to any contradictions in its argument. *See id.* Thus, the Court finds
   it is not a sham. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009) (noting that "the

27  inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous
   to justify striking the affidavit"); *see also Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991)

28  (explaining that the sham affidavit rule is concerned with "'sham' testimony that *flatly contradicts* early
   testimony in an attempt to 'create' an issue of fact and avoid summary judgment" (emphasis added)).

1           Kim presented evidence tending to show that the Equipment was ineffective and

2    unreasonable because it prevented him from performing some essential functions of the job.

3    SAUSD seems to argue that the Equipment was reasonable because Kim could perform all the

4    essential functions of the job with the Equipment. *See* UMF ¶ 28; Motion at 21. But some of the

5    essential functions of Kim's job are to respond timely to alarms and evacuations, and Kim could not

6    do that with the Equipment because there have been emergency drills where the lights on the

7    Equipment were not working, and the Equipment is affixed to the walls and would not always be at

8    all locations to visibly alert Kim when Kim is working with students at various locations on

9    campus. *See* Choi Dep. 25:10-15, 28:12-29:9; Ebiner Dep. 63:10-22; Nazir Dep. 229:13-18; Kim

10   Dep. 124:17-125:12, Ex. 26. And SAUSD would not guarantee that Kim would always have access

11   to the Equipment. *See* Choi Dep. 25:10-16. Kim also did not know of any emergency notifications

12   being sent to his phone, *see* Kim Dep. 125:20-126:8, and there is no other digital way to notify Kim,

13   *see id.* 126:9-14.

14          The failed evacuation after the entrance of a hostile intruder on May 23, 2022, provides an

15   example of how a jury could find the Equipment was not a reasonable alternative accommodation.

16   On that day, an individual (who later hit multiple students with a car) entered the campus without

17   permission; law enforcement was advised that the individual might have had an incendiary device

18   or bomb. *See* Barlow Dep. 156:7-15, 157:14-22, 159:8-161.7. Kim and other DHH students and

19   teachers were on campus at the time, but they were not alerted to the situation via the Equipment,

20   even though non-DHH students were advised of the situation, told not to come onto campus and to

21   act like it was a fire drill. *See id.* 162:4-164:16; 164:25-166:7, 169:2-16, 180:3-14, 190:3-13; *see*

22   *also* Kim Dep. 59:1-19. A jury could therefore find that the Equipment was not an effective

23

24

25

26

27

28

16

alternative accommodation, as it failed to alert Kim of an extremely serious emergency situation—just the concern which appears to have motivated Kim's request.[6]

In fact, when asked about what alternative accommodations were offered, Ebiner testified that the alternative accommodations offered were "things that are already in place" and that they were not effective. *See* Ebiner Dep. 176:18-178:4. Accordingly, when viewing the facts most favorably to Kim, there is enough evidence to show the Equipment was ineffective and create a genuine dispute of material fact as to the reasonableness of any alternative accommodation.[7]

>        iv.    There is a genuine dispute of material fact as to whether SAUSD engaged in
>               the interactive process in good faith.

The parties dispute whether SAUSD engaged in the interactive process in good faith, a requirement for it to prevail on summary judgment if the interactive process was triggered. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000), *vacated on other grounds sub nom. US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002); *see also* Motion at 24, 27, 29-31, 43-45, 46.

Kim has provided enough evidence to show a genuine dispute of material fact as to whether SAUSD engaged in good faith in the interactive process. As discussed above, there is a genuine dispute as to whether Kim made a request for a reasonable accommodation on March 13, 2021, which would trigger SAUSD's duty to engage in the interactive process. A jury could find that Kim

---

[6] At the hearing, Defendant's counsel argued that because the Equipment was not activated during the intruder event, Kim cannot show that he needed the dog or that the Equipment was not an appropriate alternative accommodation. But Kim presented evidence that the only reason the Equipment was not activated on that occasion was because staff refused to enter the school to activate it due to fear of being harmed. *See* Barlow Dep. 164:24-166:7. If true, this suggests that normally the Equipment would be activated in an emergency, and therefore, normally, a service dog would help.

[7] SAUSD argues that "occasional malfunctions of the Equipment or human error would not make the equipment ineffective," *see* Motion at 29, but if a malfunction of the Equipment prevented Kim from properly being alerted of emergencies and responding to them to do his job, then it is an unreasonable, ineffective accommodation. And SAUSD cannot compare the effectiveness of the Equipment to the effectiveness of a service dog, *see id.*, when at that time, Kim did not have a service dog on campus.

Furthermore, "Plaintiff's assertion that Defendant admits that the Equipment was not effective [accommodation]" is not a sanctionable lie, *see* Motion at 29, because Ebiner did testify that the alternative accommodations offered (the Equipment) were "things that are already in place" and that they were not effective, *see* Ebiner Dep. 176:18-178:4.

1   made a formal request on March 13, 2021, and that after that request, SAUSD should have provided

2   Kim with the reasonable accommodation policies and processes, but they did not do that. *See* Ebiner

3   Dep. 95:12-96:5; 102:13-20; 108:14-109:4; Nazir Dep. 73:2-6, 314:12-15, 315:14-316:3.

4       Furthermore, SAUSD contends that they acted in good faith by holding multiple interactive

5   process meetings, and that Kim caused the breakdown by refusing to discuss why he needed the

6   accommodation and refusing to provide the required medical documentation. *See* Motion at 31, 44-

7   45. However, there are multiple triable issues of fact as to whether SAUSD engaged in the

8   interactive process in good faith.

9       First, Ebiner admitted that Kim was "engaging in good faith in the interactive process

10  according to district policy" from May 2021 to March 2022. *See* Ebiner Dep. 115:5-120:19, 141:10-

11  19, 145:2-5, 146:15-18. And Kim never refused to provide any information requested by Defendant

12  related to his request for reasonable accommodation. *See* Nazir Dep. 296:7-12.[8] But SAUSD waited

13  until a year after Kim made his formal request to have its first interactive process meeting on March

14  15, 2022. *See* Ebiner Depo 129:7-22, Ex. 37, Dkt. No. 47-33. In fact, nothing "precluded the district

15  from … having those meetings earlier." *See id.* 134:3-13.

16      Second, Kim went from June to November 2022 without hearing from SAUSD, despite Kim

17  providing SAUSD with all the requested information. *See* Nazir Dep. 128:20-23; 140:22-142-21; *see*

18  *also* Nazir Dep. 154:23-155:2; Ex. 42, Dkt. No. 47-38; Ex. 45, Dkt. No. 47-41. And there is a

19  genuine dispute regarding whether Kim sufficiently provided medical documentation to address

20

21

22

23

24

25   _____

26

27  [8] SAUSD also claims that Kim caused the breakdown in the interactive process because in addition to not providing the required documentation, he "refused to consider alternatives." *See* Motion at 44-45. But as explained above, there is a question of fact as to whether Kim was even offered reasonable alternative accommodations to consider.

28

SAUSD's request. *See* Ex. 18, Dkt. No. 47-15; Kim Dep. 92:17-93:9; Nazir Dep. 150:2-13; *see also* Ebiner Dep. 135:8-138:22, 140:1:13; Nazir Dep. 136:14-21; Barlow Dep. 220:17-221:9.[9]

Lastly, after Kim's fourth interactive process meeting on April 14, 2023, the meeting summary stated that SAUSD rejected Kim's service dog request, even though Ebiner admitted in the April meeting that Kim "had provided that information well before [the] second meeting [on December 2, 2022] with him, where [Kim] had described his disability, [Kim] described limits with his hearing, [Kim] described how it impacts his work and provided specific examples." *See* Ex. 54, Dkt. No. 47-50, Ebiner Dep. 174:17-23; 195:6-20.

Accordingly, when viewing the facts in Kim's favor, a reasonable jury could find that SAUSD did not engage in the interactive process in good faith during the more than two-year span from Kim's initial accommodation request in March 2021 to when Kim was granted the accommodation in June 2023. *See* Ex. 53, Dkt. No. 47-49; Ex. 59, Dkt. No. 47-55; Ebiner Dep. 208:19-209:3.[10] The Court then DENIES summary judgment for Claim One. *See Barnett v. U.S. Air,*

---

[9] There is also a genuine dispute of material fact regarding whether SAUSD engaged with Kim's service dog company to have its questions answered as soon as possible to avoid any delay in accommodating Kim. *See* Ex. 46, Dkt. No. 47-42; Ebiner Dep. 154:11-25; Choi Dep. 71:3-11. There was nothing "precluding SAUSD from asking their questions about the service dog earlier in 2021." *See* Ebiner Dep. 155:22-156:3, 157:23-160:7; *see also* Ex. 32 ¶ 14, Dkt. No. 47-28.

[10] Kim contends that an "unwarranted delay in the reasonable accommodation process amounts to a denial." *See* Motion at 25. SAUSD contends that it is not responsible for any delay because "the District did not have the requested information until June 2023," *see* Motion at 30, but as explained above, SAUSD did have the requested information well before December 2022. Kim does not cite any binding Ninth Circuit precedent for its delay argument, *see id.*, but the Court finds that SAUSD's nearly two-and-a-half-year delay in providing Kim with his reasonable accommodation shows evidence of how SAUSD did not engage in interactive process in good faith, because "neither side can delay or obstruct the process." *Humphrey,* 239 F.3d at 1137.

Furthermore, at the hearing, Defendant's counsel argued that only a portion of the delay was due to SAUSD, but the Court still finds that Kim has established a genuine issue of material fact, because as discussed above, SAUSD has acknowledged that some of the delay was due to its actions, and Kim also presented evidence that the delay by Kim's service dog company was in part due to the delay by SAUSD. *See* Exhibit 46, Dkt. No. 47-42.

*Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000), *vacated on other grounds, US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).[11]

### B. There Are Genuine Disputes of Material Fact As To Kim's Rehabilitation Act and Section 11135 Claims (Claims Two and Seven).

SAUSD contends that Kim's Section 504 claim under the Rehabilitation Act fails because 1) Kim does not have standing, and 2) SAUSD provided Kim with a reasonable accommodation in the form of the Equipment. *See* Motion at 33-34, 37-38.[12]

#### i.    Kim has standing.

Kim has standing to assert a claim under the Rehabilitation Act. SAUSD contends that Kim was granted the accommodation he requested, so he is not entitled to any injunctive relief and thus his claim is moot, and he has suffered no other injury in fact. *See* Motion at 33.

The Supreme Court has instructed the Court to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits "are the primary method of obtaining compliance with the Act." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205 (1972)). "[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Part or all of a case may become moot if (1) "subsequent events [have] made it absolutely clear that the allegedly wrongful behavior [cannot] reasonably be expected to recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1274 (9th Cir. 1998) (citation omitted); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528

---

[11] The burden would then shift to SAUSD to "prove the unavailability of a reasonable accommodation," *Snapp*, 889 F.3d at 1095, but SAUSD cannot prove that because, as discussed above, there is a genuine dispute as to whether the service dog accommodation posed an undue hardship and whether the Equipment was an effective alternative accommodation.

[12] SAUSD also contends that Kim cannot succeed on the Rehabilitation Act claim because Kim could not show an adverse employment action under the ADA, but as discussed above, the ADA claim was for failure to accommodate, which did not require an adverse employment action. Also, like the ADA, an independent claim for failure to accommodate under the Rehabilitation Act does not require an adverse employment action. *See Fuller v. Frank,* 916 F.2d 558, 561 (9th Cir. 1990).

1    U.S. 167, 190 (2000). "The burden of demonstrating mootness 'is a heavy one.'" *Norman-Bloodsaw*,

2    135 F.3d at 1274.

3         Here, SAUSD has not met its burden to show the "allegedly wrong behavior" will not

4    reoccur. In particular, it is undisputed that SAUSD only granted Kim's accommodation request after

5    Kim informed SAUSD that he was planning to file suit. *See* Ex. 59, DKt. No. 47-55; Ebiner Dep.

6    208:19-209:3; Ex. 53, Dkt. No. 47-19. In light of this, this Court cannot find that it is "absolutely

7    clear" that the wrongful behavior cannot be reasonably expected to recur. To the contrary, it appears

8    that the lawsuit may have motivated the accommodation grant, and SAUSD has not pointed to

9    anything in the record suggesting that it could not revoke the grant and fail to accommodate Kim in

10   the future once the litigation is no longer pending. *See* Motion at 37-38. Thus, the case is not moot,

11   and Kim still faces an ongoing injury of not being accommodated.

12        Furthermore, SAUSD contends that because the request for injunctive relief is moot, Kim's

13   claim can only stand if he can recover compensable damages, and there is no causal connection

14   between the costs associated with obtaining the service dog and SAUSD's unlawful conduct. *See*

15   Motion at 33; *see also Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022)

16   (holding emotional distress damages are not recoverable under the Spending Clause

17   antidiscrimination statutes, like the Rehabilitation Act). However, Kim's claim for injunctive relief

18   is still live, so Kim has still suffered an injury for standing. And the Court finds that Kim has

19   suffered compensable damages because of SAUSD's failure to accommodate to establish an injury

20   in fact. Kim acknowledged the different travel costs at that time he went for his service dog training,

21   which shows a causal connection between the costs and SAUSD's conduct, because travel prices

22   may have been cheaper if SAUSD approved Kim for the accommodation earlier and Kim could have

23   done the training in a less busy time. *See* UMF ¶ 104 (Opp.); Ex. 20, Dkt. No. 48 at 106, 116-19,

24   131, 186-87; *see also* 29 U.S.C. § 794a(b) (noting attorney's fees and costs are compensable for a

25   Rehabilitation Act claim); 42 U.S.C. § 12205 (same compensable damages for an ADA claim);

26        Also, an actual controversy still exists beyond the accommodation request and damages,

27   because Kim additionally seeks "policies and training to prevent the discrimination, he experienced

28   from reoccurring with himself and other deaf staff." Motion at  36; *see* Ex. 1 Prayer for Relief ¶

(1)(c), (d), Dkt. No. 46-5 ("To train Defendant's employees and agents in how to accommodate the rights and needs of deaf and hard of hearing persons; To implement nondiscriminatory protocols, policies, and practices for accommodating deaf and hard of hearing employees"). SAUSD admitted that it failed to investigate Kim's complaints of disability discrimination and failure to accommodate, even though SAUSD's own policies require complaints to be immediately investigated. *See* Ebiner Dep. 78:23-80:18; Ex. 27, Dkt. No. 47-23 (SAUSD's complaint and discrimination policy); *see also* Nazir Dep. 38:1-23, 39:22-40:14. And there is no ADA training on reasonable accommodations for SAUSD employees. *See* Ebiner Dep. 17:2-19, 18:21-19:11. Therefore, there is an "actual controversy" as to Kim's disability discrimination claim for injunctive relief on SAUSD's policies. *See Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019). Accordingly, there is standing for Kim's Rehabilitation Act claim.[13]

### ii. There is a genuine dispute as to whether Kim was provided a reasonable alternative accommodation.

As discussed above there is a genuine dispute of material fact as to whether the Equipment was a reasonable alternative accommodation under the ADA. The same ADA standards apply to analyzing a violation of Section 504 of the Rehabilitation Act. *See McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098 (9th Cir. 2013). Therefore, since Kim has standing under the Rehabilitation Act, and summary judgment was denied as to the ADA claim, the Court DENIES summary judgment on the Section 504 claim.

SAUSD also claims that Kim's Section 11135 of the California Government Code fails because there was no discrimination or no denial of full and equal access to benefits. *See* Motion at 53. However, California Government Code "Section 11135 'is identical to the Rehabilitation Act

---

[13] SAUSD cannot argue there were no "sufficient allegation in the Complaint to understand" the nature of Kim's injunctive relief claim for policies, *see* Motion at 38, because Kim has put forth deposition evidence in the Motion briefing to demonstrate why there is a live case here for injunctive relief as to the policies. The Court looks to such evidence and not to only the allegations in the complaint at a Motion for Summary Judgment posture. *See Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058, 1060-61 (9th Cir. 2023).

except that the entity must receive State financial assistance rather than Federal financial assistance.'" *Bassilios v. City of Torrance*, 166 F. Supp. 3d 1061, 1084 (C.D. Cal. 2015); *see also* Cal. Gov. Code § 11135(a). SAUSD receives state funding. *See* UMF ¶ 108. Therefore, because the Court DENIES summary judgment on the Rehabilitation Act claim, the Court accordingly DENIES summary judgment on the Section 11135 claim.

### C. SAUSD is Entitled to Summary Judgment on Kim's Section 12940(a) Claim (Claim Three).

SAUSD contends that Kim's Section 12940(a) claim fails because Kim did not suffer an adverse employment action. *See* Motion at 39. Kim contends that it is an adverse employment action, because "there is no doubt that the failure to accommodate an employee in such a way that endangers his safety and the safety of children in his care, materially affects the conditions of his employment." Motion at 40-41.

"A prima facie case for discrimination on grounds of physical disability under the FEHA [Section 12940(a)] requires [the] plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." *Alamillo v. BNSF Ry. Co.,* 869 F.3d 916, 920 (9th Cir. 2017) (quoting *Faust v. Cal. Portland Cement Co.*, 58 Cal. Rptr. 3d 729, 745 (Cal. Ct. App. 2007)). An adverse employment action must result in a "substantial adverse change in the terms and conditions of the plaintiff's employment." *Akers v. County of San Diego*, 116 Cal. Rptr. 2d 602, 612 (Cal. Ct. App. 2002); *see also Malais v. Los Angeles City Fire Dep't*, 58 Cal. Rptr. 3d 444, 449 (Cal. Ct. App. 2007). "The plaintiff must show the employer's … actions had a detrimental and substantial effect on the plaintiff's employment." *McRae v. Dep't of Corr. & Rehab.*, 48 Cal. Rptr. 3d 313, 319 (Cal. Ct. App. 2006). The refusal to participate in the interactive process or refusal to provide a reasonable accommodation—without more—"do not constitute 'adverse employment actions' in the context of a claim of discrimination." *Miller v. Dep't of Corr. & Rehab.*, 325 Cal. Rptr. 3d 746, 759 (Cal. Ct. App. 2024) (quoting *Brown v. Los Angeles Unified School Dist.*, 275 Cal. Rptr. 3d 322, 332-33 (Cal. Ct. App. 2021)).

1  According to Kim, this particular failure to accommodate—which endangered his safety, as

2  illustrated by the intruder incident—did constitute an adverse employment action because it

3  necessarily had a detrimental and substantial effect on his employment. *See* Motion at 40-41. But the

4  governing case law—including *Miller* and *Brown*—foreclose this because nothing *changed* about

5  the conditions of Kim's employment. His recourse is therefore under the failure to accommodate

6  provisions of the ADA and FEHA. Accordingly, the Court GRANTS summary judgment to SAUSD

7  on the Section 12940(a) claim.

8
   **D.  There are Genuine Disputes of Material Fact as to Kim's Section 12940(m) and
9      12940(n) Claims (Claims Four and Five).**

10  As discussed above, there are genuine disputes of material fact as to whether Kim was

11  provided a reasonable accommodation (the service dog or the Equipment), and as to whether

12  SAUSD engaged in the interactive process in good faith.

13  Also, SAUSD contends that "allowing Kim to bring a dog on campus without knowledge of

14  specific information would impose an undue hardship to the District." Motion at 43.

15  There is a genuine dispute of material fact as to whether it is an undue hardship for SAUSD

16  to provide Kim with a service dog. SAUSD contends that there were many "different risk factors []

17  involved in allowing an animal to be in an elementary school, including allergies, fear factor,

18  improper interaction of students with the animal, etc., [so] it was extremely difficult if not

19  impossible for SAUSD to approve something it did not know what it was giving an approval for."

20  *See* Motion at 43; *see also* UMF ¶ 34. However, James Ebiner, SAUSD's 30(b)(6) deponent for all

21  issues in the Motion, *see* Ebiner Dep. 12:21-15:6, admitted that granting Kim's reasonable

22  accommodation to have a service animal at work would not have posed a safety risk, was not a direct

23  threat to Kim or others, was not an undue hardship for SAUSD that would allow SAUSD to refuse

24  Kim's accommodation request, and was not a business necessity that would have allowed SAUSD to

25  deny Kim's accommodation request, *see id.* at 65:20-66:24. Furthermore, SAUSD argues that not

26  knowing the dog's size and breed posed an undue hardship on SAUSD. *See* Motion at 43; UMF ¶

27  70. But a federal regulation prohibits SAUSD from denying an accommodation of a service dog

28  based on a dog's size or breed. *See* 28 C.F.R. § 35.136(f); 28 C.F.R. § Pt. 35, App. A ("The

Department does not believe that it is either appropriate or consistent with the ADA to defer to local laws that prohibit certain breeds of dogs based on local concerns that these breeds may have a history of unprovoked aggression or attacks. … State and local government entities have the ability to determine, on a case-by-case basis, whether a particular service animal can be excluded based on that particular animal's actual behavior or history—not based on fears or generalizations about how an animal or breed might behave."); *see also Frequently Asked Questions about Service Animals and the ADA, Breeds, Question 23,* U.S. DEP'T. OF JUST. C.R. DIV., https://www.ada.gov/resources/service-animals-faqs/ (last visited Oct. 17, 2025). Accordingly, when viewing the facts in the light most favorable to Kim, there is a genuine dispute of material fact as to whether providing Kim's service dog accommodation would pose an undue hardship to SAUSD.

So, the Court DENIES summary judgment on claims four and five under Section 12940(m), (n). *See* Motion at 42-51.[14]

### E. SAUSD is Entitled to Summary Judgment on Kim's Section 12940(k) Claim (Claim Six).

SAUSD contends that Kim's failure to prevent discrimination claim under Section 12940(k) fails because his Section 12490(a) claim failed. *See* Motion at 52. For a Section 12940(k) claim, where it is unlawful "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring," *see* Cal. Gov't Code § 12940(k), the plaintiff must show that he or she was subject to discrimination in the course of employment, the employer failed to take all reasonable steps to prevent the discrimination, and the plaintiff was harmed as a result. *See Kruitbosch v. Bakersfield Recovery Servs., Inc.,* 336 Cal. Rptr. 3d 815, 835 (Cal. Ct. App. 2025). An actionable

---

[14] The fact that Kim got his accommodation after a nearly two-and-a-half-year delay does not preclude the Section 12940(n) claim for failure to engage in the interactive process, *see* Motion at 47 (citing *Wilson v. County of Orange*, 87 Cal. Rptr. 3d 439, 447 (Cal. Ct. App. 2009)), because unlike the plaintiff in *Wilson*, Kim was not offered a reasonable temporary or alternative accommodation. *Wilson*, 87 Cal. Rptr. 3d at 447. Thus, a jury could find that SAUSD did "not participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information [that] is available, or more accessible, to one party." *Kaur*, 299 Cal. Rptr. 3d at 453 (quoting *Scotch v. Art Inst. of California*, 93 Cal. Rptr. 3d 338, 361 (Cal. Ct. App. 2009)).

claim under Section 12940(k) "is dependent on a claim of actual discrimination." *Miller v. Dep't of Corr. & Rehab.*, 325 Cal. Rptr. 3d 746, 766 (Cal. Ct. App. 2024). Thus, "where ... a plaintiff cannot establish a claim for discrimination, the employer as a matter of law cannot be held responsible for failing to prevent the same." *Id.*

Here, because the Court granted summary judgment to SAUSD on Kim's 12940(a) claim for disability discrimination, SAUSD cannot be held liable for failure to prevent discrimination. *See Featherstone v. S. California Permanente Med. Grp.*, 217 Cal. Rptr. 3d 258, 272-73 (Cal. Ct. App. 2017). Accordingly, the Court GRANTS summary judgment to SAUSD on claim six.[15]

### F. Kim is Entitled to Summary Judgment for Some of the Certain Affirmative Defenses.

Kim seeks summary judgment on SAUSD's affirmative defenses 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, and 13. *See* Motion at 54-55. Kim contends that SAUSD's affirmative defenses of "failure to state a cause of action" (Number 1), "Causation" (Number 3), "Legitimate non-discriminatory reasons" (Number 6), "Plaintiffs own acts or omissions" (Number 8), "Anti-Discrimination Policy" (Number 9), and "Additional (unnamed) affirmative defenses" (Number 13) are not affirmative defenses. *See id.* at 54. Kim then contends that the affirmative defenses of "business necessity" (Number 5), "job relatedness" (Number 7), and "No Responsibility for Noneconomic Damages" (Number 11) do not apply to the claims pled. *See id.* at 54-55. And lastly, Kim argues that the affirmative defense of "Mitigation of Damages" (Number 2) is not relevant for this case, and the affirmative defense of "Acts or Omissions of third parties" (Number 4) fails as a matter of law because a public accommodation is responsible for its own violations of the ADA. *See id.* at 55.[16]

---

[15] It is true that SAUSD admitted that it failed to investigate Kim's complaints of disability discrimination and failure to accommodate, even though SAUSD's own policies require complaints to be immediately investigated. *See* Motion at 52; Ebiner Dep. 78:23-80:18; Ex. 27, Dkt. No. 47-23 (SAUSD's complaint and discrimination policy); *see also* Nazir Dep. 38:1-23, 39:22-40:14. But because Kim cannot succeed on a Section 12940(a) claim, due to having no adverse employment action, as a matter of law, Kim cannot succeed on a Section 12940(k) claim as well.

[16] Kim claims affirmative defense Number 17 "uncertainty" is not an affirmative defense, *see* Motion at 54, but in SAUSD's First Amended Answer, "uncertainty" is not listed as an affirmative defense, *see* First Amended Answer, Dkt. No. 23.

SAUSD first contends that Kim's cross-motion on affirmative defenses is not sufficiently briefed because in its argument for affirmative defenses Numbers 1, 3, 6, 8, 9, and 13, "[Kim] failed to describe content of the defenses or even attached the Amended answer as an Exhibit." *See id.* at 55-66. SAUSD next contends that it is not fully briefed for an additional reason—that Kim's arguments for affirmative defenses Numbers 2, 4, 5, and 7 "[did not] contain any arguments and refers to unapplicable law." *See id.* at 55-56. Finally, SAUSD contends that even if summary judgment on the affirmative defenses is granted, it will not impact SAUSD's trial on claims to which no affirmative defense has been asserted, and "Plaintiff can still raise those defenses at trial regardless." *Id.* at 56.

Here, Kim did not address SAUSD's arguments in a reply, and therefore this Court can treat those arguments as conceded. Nevertheless, for the sake of providing clarity for the parties at trial, the Court will proceed to address and rule on each of the challenged affirmative defenses. As a preliminary matter, an affirmative defense is a defense that would negate liability even though the plaintiff has met all of the elements of the claim. *See Defense*, Black's Law Dictionary (11th ed. 2019). For that reason, the absence of an element of the Plaintiff's case-in-chief is not a proper affirmative defense. *See Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).

SAUSD's first affirmative defense—failure to state a cause of action—is not an affirmative defense, but merely a restatement of the fact that the Plaintiff must state a proper cause of action. The Court therefore GRANTS summary judgment in Kim's favor on this affirmative defense.

SAUSD's second affirmative defense—failure to mitigate damages—appears to be a proper affirmative defense, and Kim has provided no explanation as to why it is not. Kim contends that failure to mitigate is only relevant in wrongful discharge causes of action, *see* Motion at 55 (citing *Parker v. Twentieth Century-Fox Film Corp.*, 474 P.2d 689 (Cal. 1970)), but *Parker* does not hold that failure to mitigate damages is only a defense to wrongful discharge, *see* Parker, 474 P.2d at 689. In fact, failure to mitigate damages is relevant in other tort causes of action as well. *See Mitigation,* 2 American Law of Torts § 8:17 (2025). The Court therefore DENIES summary judgment to Kim on this affirmative defense.

SAUSD's third affirmative defense—causation—is not a proper affirmative defense as it merely restates one of the elements of the discrimination claims. *See* Ninth Cir. Civ. Pattern Jury Instr. § 12.9 ("a reasonable accommodation is available that *would have enabled* the plaintiff to [apply or qualify for] [perform the essential functions of] the job" (emphasis added)). The Court therefore GRANTS summary judgment in Kim's favor on this affirmative defense.

SAUSD's fourth affirmative defense—acts or omissions of third parties—is also not a proper affirmative defense, as the causation element requirement addresses this. *See id.* The Court therefore GRANTS summary judgment in Kim's favor on this affirmative defense.

SAUSD's fifth affirmative defense—business necessity—appears to be a proper affirmative defense, and Kim has provided no explanation as to why it is not. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 995 n.10 (9th Cir. 2007); Ninth Cir. Civ. Pattern Jury Instr. § 12.11. The Court therefore DENIES summary judgment to Kim on this affirmative defense.

SAUSD's sixth affirmative defense—legitimate non-discriminatory reason— appears to be an inapplicable affirmative defense only to the extent that it is addressed in the elements of the relevant claims. The Court therefore DENIES summary judgment to Kim on this affirmative defense; at trial, the parties can identify which claims this affirmative defense applies to.

SAUSD's seventh affirmative defense—job relatedness—is also not a proper affirmative defense, because this is a consideration of the job necessity defense. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 995 n.10 (9th Cir. 2007) (noting that the "business necessity defense" incorporates "requirements of job-relatedness and reasonable accommodation"); *see also* 42 U.S.C. § 12113(a). The Court therefore GRANTS summary judgment in Kim's favor on this affirmative defense.

SAUSD's eighth affirmative defense—plaintiff's own acts or omissions—is also not a proper affirmative defense, as the causation element requirement addresses this. The Court therefore GRANTS summary judgment in Kim's favor on this affirmative defense.

SAUSD's ninth affirmative defense—anti-discrimination policy—is also not a proper affirmative defense. The Court is not aware of any authority which establishes that the existence of an anti-discrimination policy shields a defendant of all liability even if the elements of the

discrimination claim are met. The Court therefore GRANTS summary judgment in Kim's favor on this affirmative defense.

SAUSD's eleventh affirmative defense—no responsibility for noneconomic damages—is also not a proper affirmative defense as it is addressed in the causation and damages elements. *See* Judicial Council of California Civil Jury Instructions (2025 edition), CACI No. 2541, Disability Discrimination—Reasonable Accommodation—Essential Factual Elements (Gov. Code, § 12940(m)); *See* Judicial Council of California Civil Jury Instructions (2025 edition), CACI No. 3902, Economic and Noneconomic Damages. The Court therefore GRANTS summary judgment in Kim's favor on this affirmative defense.

SAUSD's thirteenth affirmative defense—additional unnamed affirmative defenses—is not a proper affirmative defense, because now that discovery has closed, SAUSD must identify what its specific affirmative defenses are, and it has failed to do so. The Court thus GRANTS summary judgment in Kim's favor on this "catch-all" affirmative defense.

## VI.  <u>Conclusion</u>

For the foregoing reasons, the Court hereby ORDERS as follows:

1. SAUSD's Motion for Summary Judgment is GRANTED IN PART:

    a. GRANTED as to the following causes of action asserted by Kim:

        i. Third Cause of Action (Section 12940(a)); and

        ii. Sixth Cause of Action (Section 12940(k)); and

    b. DENIED as to the following causes of action asserted by Kim, which shall remain for trial:

        i. First Cause of Action (ADA Failure to Accommodate);

        ii. Second Cause of Action (Rehabilitation Act);

        iii. Fourth Cause of Action (Section 12940(m));

        iv. Fifth Cause of Action (Section 12940(n)); and

        v. Seventh Cause of Action (Section 11135);

2. Kim's Motion for Summary Judgment as to SAUSD's Affirmative Defenses is GRANTED IN PART:

a.  GRANTED as to the following affirmative defenses asserted by SAUSD:

    i.  First Affirmative Defense (Failure to State a Claim);

    ii.  Third Affirmative Defense (Causation);

    iii.  Fourth Affirmative Defense (Acts or Omissions of Third-Parties);

    iv.  Seventh Affirmative Defense (Job Relatedness);

    v.  Eighth Affirmative Defense (Plaintiff's Own Acts or Omissions);

    vi.  Ninth Affirmative Defense (Anti-Discrimination Policy);

    vii.  Eleventh Affirmative Defense (No Responsibility for Noneconomic Damages); and

    viii.  Thirteenth Affirmative Defense (Additional Unnamed Affirmative Defenses); and

b.  DENIED as to the following affirmative defenses asserted by SAUSD, which shall remain for trial:

    i.  Second Affirmative Defense (Failure to Mitigate Damages);

    ii.  Fifth Affirmative Defense (Business Necessity); and

    iii.  Sixth Affirmative Defense (Legitimate Non-Discriminatory Reason).

c.  Kim did not move for summary judgment on the following affirmative defenses asserted by SAUSD, and they, too, shall remain for trial:

    i.  Tenth Affirmative Defense (Discretionary Immunity); and

    ii.  Twelfth Affirmative Defense (Unclean Hands).

IT IS SO ORDERED.

Dated: November 26, 2025

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge